ROBERT BLANKENSHIP, APPELLANT, V. OMAHA PUBLIC POWER DISTRICT, APPELLEE.

237 N. W. 2d 86

Filed January 8, 1976. No. 40107.

Charles I. Scudder and Howard Kaiman, for appellant.

Hird Stryker of Fraser, Stryker, Veach, Vaughn & Muesey, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

The question for determination in this case is whether the plaintiff was entitled to maintain this action as representative of a class under the provisions of section 25-319, R. R. S. 1943. The defendant is a public power district and political subdivision of the State of Nebraska organized under the provisions of Chapter 70, R. R. S. 1943, and is engaged in the distribution and sale of electrical energy. The plaintiff is a resident of the city of Omaha and a customer of the defendant. He seeks in this action to have certain "late payment charges" or "forfeited discounts," which are imposed by the defendant as a part of its rate structure, declared usurious. He further requests an accounting and refund of all such allegedly unlawful charges to those entitled thereto after deduction of court costs and attorneys' fees. He asks the court to enjoin future imposition of such late charges and seeks other relief.

The plaintiff's right to bring the action as representative of a class was challenged on a motion of the defendant for summary judgment. Supporting and contending affidavits were received. The court granted the motion for summary judgment and dismissed the action without prejudice to the right of the plaintiff to sue on his own behalf.

The plaintiff alleged two causes of action. In the first cause the claimed class which the plaintiff asks to represent are all those customers or rate payers of the defendant who have, in the 5 years preceding the filing of the petition, paid late charges or forfeited discounts because of failure to pay by the due date. In the second cause of action the claimed class is all those

customers who will be "forced" in the future to pay the alleged illegal late charges.

The record establishes that the rate schedules of the defendant contain the following provisions:

"Schedule No. 10

Residential Service

" 'The net monthly bill, computed in accordance with the net monthly rate; plus an amount of ten percent, but not to exceed $5.00, which amount will be deducted if the bill is paid on or before the gross date thereon.'

"Schedule No. 30

General Service

" 'The net monthly bill, computed in accordance with the net monthly rate, plus an amount of ten percent, but not to exceed $25.00, which amount will be deducted if the bill is paid on or before the gross date thereon.' "

The plaintiff adduced, by way of affidavit, expert opinion evidence which characterized the late charges as "interest" and calculated the amount of such "interest" so as to show it usurious under the laws of this state.

Uncontroverted affidavits produced by the defendant established the following: For the years 1969 through 1973 (the approximate 5 years to which the plaintiff's petition applies), 98-plus percent of the defendant's customers came under schedules 10 and 30 and were subject to the late charges or forfeited discounts when the accounts were not paid "on or before the gross date"; that the total of the "forfeited discounts" for the 5 years in question was $2,409,397.31, or approximately $500,000 annually; that the defendant has the capability of determining from its records, with minor exceptions, "the identity and amounts of forfeited discounts"; and that if the defendant is required to "make refunds of forfeited discounts and/or to discontinue the gross-net billing procedure it will be necessary to replace the sums represented thereby by the adoption of new rate schedules the burden of which will be borne by all rate payers of the District including the plaintiff,

Robert Blankenship in order for the District to cover its operating expenses, debt service requirements and capital improvements." The affidavits further state: ". . . that approximately 85% of the rate payers pay the District for electrical energy before the due date shown on the rate-payer's billing, thus automatically being entitled to the net charge without regard to the gross. As to the remaining approximately 15% the discount is forfeited, subject however, to the dollar ceiling set forth in the District's rate schedules"; and that 1973 is a typical year and in that year billings for electrical energy by the defendant were $70,715,403.26 and forfeited discounts for that year were $570,257.25.

We observe that the defendant is not a utility whose charges for sale of energy are regulated by a public body empowered to regulate rates generally, but that its rates are fixed by its own board of directors in accordance with statutory standards. § 70-655, R. R. S. 1943. The law further authorizes the public power districts to operate in a successful and profitable manner. City of O'Neill v. Consumers Public Power Dist., 179 Neb. 773, 140 N. W. 2d 644; York County Rural Public Power Dist. v. O'Connor, 172 Neb. 602, 111 N. W. 2d 376. See, also, § 70-636, R. R. S. 1943. The statutes, however, do provide for intervention by the Power Review Board where an applicant for service and the supplier cannot agree upon the terms of service or where an applicant claims discrimination in the service. § 70-1017, R. S. Supp., 1974.

We must first dispose of a procedural point. Plaintiff urges that a motion for summary judgment is not an appropriate method for disposing of the issue of the plaintiff's right to sue as representative of a class and that the trial court erred in so doing. His position is that the remedy of summary judgment is available only to determine whether or not there is a factual issue upon which legal liability rests and that the right to represent a class is not such an issue. Section 25-1332, R. R. S.

1943, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our summary judgment act authorized partial summary judgments. § § 25-1330, 25-1332, 25-1333, R. R. S. 1943. See, Burroughs Corp. v. James E. Simon Constr. Co., 192 Neb. 272, 220 N. W. 2d 225; Hart v. Ronspies, 181 Neb. 38, 146 N. W. 2d 795. While a partial summary judgment will not usually be a final order, it may be when the effect is to wholly determine the case. It was a final order in this case because the summary judgment determined the merits of the plaintiff's claim to represent the class and hence directly affected much of the relief for which he prayed.

If under the undisputed facts the right of a plaintiff to sue as representative of a class is one of law, then there appears to be no reason why that portion of the plaintiff's "claim" should not be determined under the provision of the statute authorizing such judgment upon "all or any part thereof." § 25-1330, R. R. S. 1943. No party cites any case directly on point and we have found none. Defendant called to our attention Coffelt v. Arkansas Power & Light Co., 248 Ark. 313, 451 S. W. 2d 881, which involved a claim such as the one at issue here and was decided upon summary judgment. However, there was in that case no challenge on the class action aspect of the suit. We hold that the right of a party to sue as representative of a class may be raised by a motion for summary judgment.

The defendant's position on the main issue before us is that persons having an interest adverse to the parties purported to be represented cannot maintain a class suit on behalf of the latter. It relies upon our opinion in Evans v. Metropolitan Utilities Dist., 185 Neb. 464, 176 N. W. 2d 679. The plaintiff, on the other hand, argues that Evans is distinguishable from the present

situation and urges that our opinion in Gant v. City of Lincoln, 193 Neb. 108, 225 N. W. 2d 549, is determinative. In Gant we did not determine whether or not the suit was properly brought as a class action. The question there was the power of the trial court to vacate the judgment after term under the provisions of section 25-2001, R. R. S. 1943. We there said: "In determining whether a class action is properly brought, considerable discretion is vested in the trial court. In the absence of appeal, that decision is final and even though it may have been erroneous, it is not void. In the present instance the case did not come within the purview of section 25-2001, R. R. S. 1943 (power of the District Court to vacate judgment after term in which it was entered) and unless the judgment was void, the District Court was without authority to set it aside." Whatever else was said in that case about the characteristics of a class suit was dicta. We made no determination that Gant was a proper class action, we simply said that having so proceeded did not make the judgment void.

Section 25-319, R. R. S. 1943, provides: "When the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." This statute represents an application of the equitable doctrine of virtual representation and makes the doctrine applicable in appropriate circumstances to law actions. 59 Am. Jur. 2d, Parties, §§ 58, 59, p. 427 et seq. It is implicit in the doctrine of virtual representation that there must be no conflict of interest between the representative and those represented. That is one of the principles that underlies our holding in Evans v. Metropolitan Utilities Dist., supra. As we read that case, its rule is that if any party included in the class stands to suffer an economic loss as the result of his inclusion, the party initiating the class action will "have an interest adverse to those" of the party he purports to represent

with the result that the action is not being brought "for the benefit of all members of the class," and the claim as a class suit must therefore fail.

Other courts have said that it is essential that the person or persons who thus appear as representatives have interests which are, in fact, similar to and consistent with those of the other members of the purported class. 132 A. L. R. 749, 750. They have also said potentially conflicting interests within the class are incompatible with the maintenance of a true class action. Wolf v. Bennett, 118 Ind. App. 567, 82 N. E. 2d 262; State v. Laramie Rivers Co., 59 Wyo. 9, 136 P. 2d 487.

The trial judge in the case at hand found: "If plaintiff were to succeed upon the first cause of action, it would be required that defendant accumulate a fund in excess of $2,000,000.00. Its only source would be its rate payers. The result would be that, in some instances, members of the successful class would be subjected to a rate increase (or denied a rate decrease, as the case may be) which would, in dollars or cents, exceed the amount of their recovery, even ignoring the fact that the fund would itself be diminished on account of attorney fees prior to its distribution.

"The same result is reached in the second cause of action, though with less clarity. Were plaintiff to succeed, defendant would necessarily be required to modify its rates so as to maintain the $500,000.00 plus annual income which would otherwise be lost to it. Of the class, in this instance, including all the rate payers, no doubt some would be financially advantaged while some would be financially disadvantaged over any period of time."

The determination on motion for summary judgment of the plaintiff's right to represent the class gives rise to a problem which is not present in the usual determination on summary judgment. On such motion the question for determination is whether there exists a genuine issue of fact that must be decided. If there is, then the

matter cannot be determined on motion for summary judgment. If there is no genuine issue of fact, and if as a consequence one party is entitled to judgment as a matter of law, the entry of summary judgment is appropriate. In summary judgment procedure the court is not concerned with questions of burden of proof.

When we attempt to apply these fundamental principles to the questions the trial court had to determine here, we are at once inclined to ask ourselves, what must the plaintiff demonstrate in order to be granted the right to commence a class action? Yet, when we do so, we seem to be talking about a burden of proof, which, under the conventional rules applicable to summary judgments, ought not to be a consideration.

Reflection and examination of pertinent authority, however, supply the answer to this apparent puzzle. All the court need determine in granting a motion for summary judgment denying the plaintiff the right to proceed in a class action is that the undisputed facts demonstrate the potentiality of conflict of interests between the represented, or some of them, and the interests which the plaintiff asserts.

The policy underlying our holding in Evans v. Metropolitan Utilities Dist., *supra,* appears to be the same as that underlying Rule 23(a)(3) and (4) of the Federal Rules of Civil Procedure. In Gerlach v. Allstate Ins. Co., 338 F. Supp. 642 (S. D. Fla.), that court on motion for summary judgment denied the right of the plaintiff to represent the class. In that case the underlying issue was collection on behalf of a class of a penalty under the Truth in Lending Act. The court, among other things, said: ". . . a potential result, if plaintiff's position were sustained, of rendering Allstate unable to meet its commitments to provide insurance coverage to its policyholders, since the imposition of the $100 penalty with respect to each policyholder would run into approximately a billion dollars and as a consequence plaintiff's position is adverse to those policyholders who would prefer insur-

ance coverage to the $100 penalty and risk of loss of coverage." The Eighth Circuit, in Ihrke v. Northern States Power Co., 459 F. 2d 566,[1] in a somewhat similar situation (acting, however, on the pleadings rather than on motion for summary judgment), reached a like result. In that case the plaintiff sought a declaration of the invalidity of the rules and regulations relating to the termination of utility service. The complaint in that case said: " '6. The plaintiffs are members of a class composed of all persons who reside in the City of Saint Paul and who have made application to the defendant, Northern States Power, for utility service. . . . 7. The plaintiffs are members of a subclass of the above defined class composed of those persons in that class who because of their poverty are unable to pay for utility services.' " The court of appeals said: "But it is highly unlikely that the claim of the Ihrkes that a hearing should be required after notice and prior to termination, is typical of the claims of the class. It is likely that some customers of Northern would feel that the additional expense of such a procedure, if it is indeed required, could conceivably result in a rate increase to all customers, and this certainly would not be considered desirable by all of the subscribers of Northern.

"The same analysis is applicable to the subclass, although it is conceded there would be a larger percentage of the subclass which would share the view that a pretermination hearing should be held. It should also be noted that the membership of the subclass (persons who because of their poverty are unable to pay for utility services), would be impossible to determine because of the vagueness of its description." The gist of these cases is summarized in a note in 53 Boston Univ. L. Rev. 418, as follows: "It is simply not sufficient for the plain-

[1] 409 U.S. 815—Certiorari granted, judgment vacated, and case remanded with instructions to dismiss case as moot.

tiff to show the existence of a common potential injury as subsection (a)(3) requires; plaintiff must additionally demonstrate that the principal relief sought is not repugnant to class members. Two potential conflicts inhere in the granting of relief for a large class of persons: the long run economic consequence of granting the relief will be harmful to the class member; or the relief or new status accruing to the class members as a consequence of success on the merits will not be in their own interest. The potential conflict alluded to here is not simply over the manner and method of division of damages. Rather it refers to a real and substantial conflict over the desirability of the remedy sought, such that absent class members would prefer to see no action brought at all if the relief envisioned by the representative were ultimately granted."

The record before the trial court on the motion for summary judgment demonstrated conflict and the potentiality of conflict of interest in several respects. It is undisputed that if the plaintiff were to prevail on the merits as the representative of a class, the defendant would have to increase its rates sufficiently to raise approximately $2,400,000 to make the refunds. This increase would be shared by the class as well as by all other rate payers. Within the class are rate payers who paid the penalty charge only once or rarely. These would likely be damaged economically in the long run by the increased rates. The ones most likely to benefit would be those in the class who frequently or always paid the late charge. It must also be borne in mind that the refunds would in all likelihood be diminished by deductions for attorneys' fees and court costs. The affidavits further show that the utilities annual cost allocated to servicing accounts not paid on time and other expenses in connection therewith is approximately equal to the annual income from late charges. If the plaintiff prevails on behalf of the class, this annual cost would also be borne in part by the class. Again those of the

class who are included only because they once or infrequently paid a late charge would bear part of the cost and would likely in the long run suffer economically. The class also includes corporations which, under the provisions of sections 45-101 and 45-102, R. R. S. 1943, may not assert the defense of usury. This interest also conflicts with those of others within the class.

Another potentiality for conflict arises from the provisions of section 70-408, R. R. S. 1943, which authorizes the utility to impose on those rate payers within "cities of the first class having a population of more than five thousand and less than twenty-five thousand inhabitants, cities of the second class, villages, and unincorporated areas . . . either a penalty on or a discount from the amount of any bill to promote prompt payment thereof under uniform rules and regulations governing such penalty or discount." The existence of this provision in the statute raises potential conflict between those in the class who reside in the areas where the late charge is statutorily authorized and those within the class who reside where it seemingly does not apply.

The ruling of the trial court on the motion for summary judgment was correct insofar as it pertains to the class action aspect of the case and should be affirmed.

The plaintiff also asserts that the trial court erred in dismissing the petition in toto in that even if plaintiff was not entitled to represent the class, he was nonetheless entitled to have his own individual cause determined on the merits. We perceive no reason why plaintiff should not be entitled to proceed on any cause of action he may have individually. The action of the trial court in dismissing plaintiff's petition insofar as it affects any cause of action which plaintiff may have individually is reversed and the cause remanded for further proceedings.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.