OPINION OF THE COURT
Alexander, J.
The issue presented on this appeal is whether a promis *147 sory note executed in favor of the judgment debtor is an instrument under UCC 9-105 (1) (i) such that intervenor Congress Talcott Corp. was required to take possession of the note in order to perfect its security interest therein prior to execution of a lien on the note’s proceeds obtained by the judgment creditor (see, UCC 9-304 [1]). We conclude that possession of the promissory note was required and that, consequently, the judgment creditor has a prior right to the proceeds due thereunder.
I
In August 1985, judgment creditor, Susan Berkowitz, entered into an agreement with judgment debtor, Chavo International, Inc. (Chavo), and Chavo’s then president, Christine Thomson, pursuant to which Berkowitz agreed to perform services as a salesperson and Chavo and Thomson agreed to pay her a commission on the resulting sales. When Chavo and Thomson later refused to make payment, Berkowitz commenced an arbitration proceeding in California resulting in an award in her favor in the amount of $125,494.67 plus interest. On October 5, 1987, this award was confirmed and reduced to judgment by the Superior Court of California, County of Los Angeles. Four days later, the California judgment, totaling $127,529.11, was duly filed in New York County pursuant to CPLR 5402.
Prior to execution of the Berkowitz service contract, Chavo entered into a factoring agreement with James Talcott, Inc., the predecessor-in-interest to intervenor Congress Talcott Corp. (Talcott). Pursuant to that agreement, Chavo assigned and sold to Talcott all of its present and future receivables: "We [Chavo] hereby assign to you [Talcott] and agree to sell to you as absolute owner all Receivables now and hereafter owned by us. The term 'Receivables’ includes all obligations of every kind at any time owing to us (whether classified under the Uniform Commercial Code as accounts, instruments, contract rights, chattel paper, general intangibles or otherwise) all proceeds thereof, all security therefor and all our rights to goods sold which may be represented thereby and all products and proceeds of such goods.” The agreement describes the assigned "Receivables” as "bona fide existing obligations created by the sale and actual delivery of goods or the rendition of services to customers in the ordinary course of business”. It is undisputed that Talcott filed the appropriate financing *148 statements covering its security interests under the factoring agreement (see, UCC 9-402).
Subsequent to the effective date of the factoring agreement but prior to the execution of Berkowitz’s judgment lien, Chavo entered into a written purchase agreement with Forest Lake Ltd. (Forest Lake) covering the purchase by Forest Lake of certain of Chavo’s assets. Under this agreement, Forest Lake became the obligor under a promissory note in the principal amount of $137,948.42 given to Chavo as payment for the purchased assets. Although this note was executed in favor of Chavo, by its terms it was made subject to the provisions of the purchase agreement which direct that payment on the note be made to Talcott in order to reduce the substantial debt amassed by Chavo under the prior factoring agreement. Both Berkowitz and Talcott claim entitlement to the proceeds due under this promissory note, the former by virtue of her judgment lien and the latter by virtue of its factoring agreement with Chavo under which it was assigned all of Chavo’s future "receivables”.
In an attempt to enforce her judgment, Berkowitz served a restraining notice and execution on Forest Lake prohibiting payment by the latter of any moneys due under the promissory note except in satisfaction of the judgment. Forest Lake thereupon notified all parties that it would withhold payment on the note until the court determined who was entitled to the proceeds. Talcott subsequently moved for an order vacating the restraining notice and execution, contending that it had a prior and superior interest in the moneys owed to Chavo by Forest Lake. Berkowitz opposed the motion, contending that Talcott lacked standing, that it had not properly perfected its security interest in the note by taking possession thereof prior to execution of the judgment lien, and that its security interest does not cover the debt owed to Chavo under the note.
In granting the motion, Supreme Court first rejected Berkowitz’s procedural argument, concluding that, as an adverse claimant, Talcott had standing to intervene in the proceeding (CPLR 5239). The court further determined that by filing the proper financing statements relating to its factoring agreement with Chavo, Talcott perfected its security interest in the note and since this filing occurred prior to execution of the judgment lien, Talcott’s security interest was superior to that of Berkowitz. Finally, the court concluded that the security *149 agreement between Chavo and Talcott properly applied to all after-acquired property of Chavo, including the promissory note at issue.
The Appellate Division reversed and reinstated the restraining notice and execution. That court determined the promissory note to be an "instrument” within the meaning of article 9 of the Uniform Commercial Code requiring that Talcott take possession of the note in order to perfect its security interest therein (UCC 9-105 [1] [i]; 9-304 [1]). Since Talcott had not taken possession, the judgment lien was held to be a prior and superior interest. In reaching this result, the court rejected Talcott’s contention that the note was not in fact an "instrument” because it was not "transferable by delivery in the ordinary course of business” (UCC 9-105 [1] [i]) concluding that, although the note was nonnegotiable because subject to the terms of the purchase agreement, nothing in the note or the agreement restricted the assignability of either (144 AD2d, at 264).
Leave to appeal was granted to Talcott by the Appellate Division which certified the following question of law for our review: "Was the order of this Court, which reversed the order of the Supreme Court, properly made?” For the reasons that follow, we now affirm and answer the certified question in the affirmative.
II
Berkowitz’s contention that the factoring agreement did not grant Talcott a security interest in the proceeds due under the promissory note because the note does not constitute a "receivable” generated in the ordinary course of Chavo’s business is without merit. The security agreement between Talcott and Chavo assigns to Talcott all of Chavo’s receivables, including "all obligations of every kind at any time owing to [Chavo]”. This contract provision is plainly broad enough to encompass the promissory note at issue. Though the agreement also provides that all "receivables” which are described in schedules prepared by Chavo "will be bona fide existing obligations created by the sale and actual delivery of goods or the rendition of services to customers in the ordinary course of business” (emphasis supplied), this provision does not narrow the scope of the term "receivable” as it pertains to those assets created in ways other than by the routine sale of goods and services. Notwithstanding that the promissory note was *150 executed in connection with a purchase agreement pursuant to which Chavo transferred a substantial share of its business assets, it clearly is an "obligation * * * owing to [Chavo]” and thus is properly embraced within those receivables assigned to Talcott under the factoring agreement. Talcott, therefore, had a security interest in the note.
Although we conclude the factoring agreement created a security interest in the proceeds due under the promissory note, the question remains as to whether Talcott was required to take possession of the note in order to perfect that security interest. It is not open to doubt that if possession were not required, then Talcott’s security interest would prevail over the judgment lien of Berkowitz since the security agreement between Talcott and Chavo and the financing statements pertaining thereto were executed and filed long before the California judgment issued. Whether or not possession was required depends on whether the subject promissory note is the sort of instrument contemplated by UCC 9-304 (1) which provides that "[a] security interest in * * * instruments (other than * * * instruments which constitute part of chattel paper) can be perfected only by the secured party’s taking possession”.
UCC 9-105 (1) (i) defines "instrument” as "a negotiable instrument * * * or a certificated security * * * or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment”. The promissory note executed by Forest Lake clearly qualifies as an "instrument” under this definition (see, UCC 3-103; 2 White & Summers, Uniform Commercial Code § 24-12, at 349 [3d ed— Practioner’s 1988]). The note constitutes a writing evidencing a monetary obligation of Forest Lake running to Chavo, it is not itself a security agreement (see, 2 White & Summers, op. cit., § 24-3, at 297-305), and notwithstanding the payment restrictions attaching to the note rendering it nonnegotiable, both the note and the agreement to which it is made subject are freely assignable — indeed, they are expressly made so by the language in the agreement and the personal guarantee accompanying the note.
Our determination that the promissory note is an "instrument” under article 9 does not end the inquiry, however, since, as suggested by Talcott, although the note is an instru *151 ment, it may also constitute "chattel paper” which may be perfected either by possession or by filing (UCC 9-304 [1]). It has been observed that "[c]hattel paper and non-negotiable instruments lie somewhere on the spectrum between the negotiable instrument on the one hand and the account on the other; for the former possession is everything, for the latter it is nothing” (2 White & Summers, op. cit., § 26-18, at 548). Section 9-105 (1) (b) of the code defines chattel paper as "a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods” and provides further that "[w]hen a transaction is evidenced both by such a security agreement or a lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper” (UCC 9-105 [1] [b]). One example of a transaction involving chattel paper offered in the official commentary to UCC 9-105 is of a dealer who sells a tractor to a farmer pursuant to a conditional sales contract and then assigns the contract to a bank in order to secure a loan. In this scenario, the conditional sales contract is the type of collateral known as chattel paper because it is a security agreement relating to specific goods that has been transferred in order to secure a debt owed by the transferor to the transferee (see, Uniform Commercial Code § 9-105, comment 3; 53 NY Jur, Secured Transactions, §56, at 301-302; Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp., 81 AD2d 168, 178).*
Talcott’s apparent argument that the promissory note is similar to the above-described conditional sales contract because it evidences both a monetary obligation and a security interest covered by its factoring agreement with Chavo must be rejected. Whether the note represents a security interest included in the prior factoring agreement is irrelevant to the issue of whether the note constitutes chattel paper. Under the proper analysis, the dispositive question is whether the note and purchase agreement together evidence a monetary obligation and a security interest in the assets purportedly sold under the agreement. Viewed in this context, the promissory note plainly does not constitute chattel paper because, al *152 though the note does evidence a monetary obligation running to Chavo, the purchase agreement creates no security interest in the goods sold thereunder. Rather, the note was offered in even exchange for the sale of Chavo’s business assets in which Chavo retained no residual interest. Inasmuch as the promissory note does not constitute chattel paper, Talcott was required to take possession thereof in order to perfect whatever security interest it may have had by virtue of its factoring agreement with Chavo. As Talcott failed to take this critical step, the Appellate Division correctly concluded that the interest of Berkowitz, as the judgment creditor, must take precedence (see, UCC 9-301).
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, etc.

 Alternatively, the conditional sales contract might be sold to the bank, not as collateral to secure a debt, but simply as personal property for value received. In this circumstance, the sales contract is still "chattel paper” and the transaction remains one governed by article 9 of the Uniform Commercial Code (see, Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp., 81 AD2d 168,178; UCC 9-102 [1] [b]).