EDWARD W. LARSEN ET AL., APPELLEES AND CROSS-APPELLANTS, V. RALSTON BANK, A NEBRASKA BANKING CORPORATION, ET AL., APPELLEES, FIRST WESTSIDE BANK, A NEBRASKA BANKING CORPORATION, APPELLANT AND CROSS-APPELLEE.

464 N.W.2d 329

Filed January 11, 1991.   No. 88-1013.

William E. Morrow, Jr., of Erickson & Sederstrom, P.C., for appellant.

Steven M. Watson, P.C., of Marks & Clare, for appellees Larsen et al.

Paul F. Prentiss, of Schmid, Mooney & Frederick, P.C., for appellee Ralston Bank.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

First Westside Bank has appealed from an order of the district court which entered a partial summary judgment in favor of Ralston Bank. We order the appeal dismissed as premature, there being no final, appealable order.

The plaintiffs, Edward W. Larsen, Carmelita A. Larsen,

Candice Marie Larsen Ishii, Dennis E. Larsen, and Linda Marie Larsen (Larsens), filed a second amended petition for declaratory judgment, naming as the defendants Ralston Bank (Ralston), First Westside Bank (Westside), Roger L. Hass, and Financial Services Company. The petition alleged that on August 16, 1982, Hass was indebted to Westside and granted Westside a security interest in a note in the principal amount of $159,052.50. The note was made by Financial Services Company and was payable to Roger L. Hass, Inc. The Larsens alleged that they owned 50 percent of the common stock of Roger L. Hass, Inc., and that Hass held the other 50-percent interest in the common stock.

The petition further alleged that in 1982, substantially all of the assets of Roger L. Hass, Inc., were sold to Financial Services Company. Hass, individually, received as consideration a $20,000 option payment and a $30,000 downpayment, as well as the promissory note in the amount of $159,052.50. According to the Larsens, Hass never did deliver their 50-percent share of the proceeds.

Hass, according to the allegations by the Larsens, was indebted to Westside, and as security for that indebtedness Westside took a written assignment of the promissory note and a written security interest in the promissory note from Hass. Upon becoming aware of this transaction, the Larsens entered into a junior pledge agreement for security with Hass, Roger L. Hass, Inc., and Westside.

The petition goes on to allege that Hass, in 1986, attempted to borrow money from Ralston, that Ralston obtained the payoff figure from Westside on its loan to Hass, that Westside delivered a written assignment of its interest in the promissory note to Ralston notwithstanding the existence of the junior pledge agreement for security and the prior assignment from Hass to the Larsens, and that Ralston thereafter obtained a written assignment from Hass of his interest in the promissory note and obtained a written security agreement from Hass using the promissory note as collateral.

After alleging that there were several wrongful acts on the part of Westside in its delivery of the promissory note to Ralston and that Ralston was not a good faith purchaser

without notice, the Larsens state that a dispute exists between the Larsens and Ralston as to who has a prior perfected security interest in the note—the Larsens by filing a security instrument or Ralston by its possession of the note. The Larsens conclude their petition with a prayer for judgment declaring the Larsens to be the legal titleholders of the promissory note; declaring and adjudicating the respective rights, priorities, and duties of all the parties; declaring that Ralston is not a good faith purchaser without notice; and determining the status of the parties in respect to the promissory note.

In its answer, Ralston admits the transactions in general, but denies that it ever had notice of the Larsens' alleged interest in the promissory note by reason of the junior pledge agreement. Ralston also denies that the promissory note is a general intangible under the Uniform Commercial Code, as alleged by the Larsens, but asserts that the promissory note was a negotiable instrument. Ralston prays that the Larsens' petition be dismissed. Ralston then filed a motion for summary judgment requesting the court order summary judgment "declaring that plaintiffs take nothing by their petition."

Westside, apparently without filing an answer, filed a motion for summary judgment generally moving the court for judgment in its favor.

The district court first entered an order dated October 6, 1988, finding that the promissory note was not a negotiable instrument as defined by the Uniform Commercial Code, granting Westside's motion for summary judgment, and denying the motion of Ralston. On November 4, 1988, the court reconsidered that portion of the October 6 order which denied Ralston's motion for summary judgment, and determined that the promissory note was an "instrument" under the Uniform Commercial Code and that Ralston was entitled to summary judgment based on its prior perfected security interest. Finally, on November 22, 1988, the court entered an order nunc pro tunc, which among other things concluded as follows:

> IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT, that the Court's docket entry of November 4, 1988, is corrected to read as

follows: On reconsideration the Court vacates the Order of October 6, 1988, which denies Ralston Bank's Motion for Summary Judgment, and grants the First Westside Bank's Motion for Summary Judgment. That the Court finds *only* that the July 3, 1982, Promissory Note at issue is an "instrument" under Nebraska U.C.C. § 9-105(1)(i) and that Ralston Bank is entitled to summary judgment *in this respect* based on its prior perfected security interest in the instrument. The First Westside Bank's Motion for Summary Judgment is denied. All remaining legal and factual issues are to be determined at trial incorporating the Court's determination of the Promissory Note as an "instrument".

(Emphasis supplied.)

Before addressing the merits, this court must raise on its own motion the question of jurisdiction over this purported appeal.

In the absence of a judgment or order finally disposing of a case, the Supreme Court has no authority or jurisdiction to act, and in the absence of such judgment or order the appeal will be dismissed. *Lewis v. Craig, ante* p. 602, 463 N.W.2d 318 (1990).

To be final, an order must dispose of the whole merits of the case and must leave nothing for the further consideration of the court. Thus, when no further action of the court is required to dispose of a pending cause, the order is final. However, if the cause is retained for further action, the order is interlocutory. *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989). Furthermore, if a party's substantial rights are not determined by the court's order and the cause is retained for further action, the order is not final. *Lewis v. Craig, supra*; *Martin v. Zweygardt*, 199 Neb. 770, 261 N.W.2d 379 (1978).

The mere fact that an appeal was prosecuted from an order sustaining a partial summary judgment is not determinative of this case. Whether a partial summary judgment is a final and appealable order depends upon its effect. *Blankenship v. Omaha P. P. Dist.*, 195 Neb. 170, 237 N.W.2d 86 (1976). In that case the action was brought as a class action, and the partial summary judgment challenged the plaintiff's right to bring such an action as representative of the class. The trial court sustained

the motion for summary judgment and ordered the action *dismissed* without prejudice to the right of the plaintiff to sue on his own behalf. In holding that the order appealed from was a final order, this court stated: "It was a final order in this case because the summary judgment determined the merits of the plaintiff's claim to represent the class and hence directly affected much of the relief for which he prayed." *Id.* at 174, 237 N.W.2d at 89.

The real problem in this case is to ascertain what the court's order determined. Appellant Westside seems to concede that by finding that the promissory note was an "instrument," a judgment dismissing the action as to Ralston was mandated. That may be, but no such order was entered by the trial court. It would have been a simple matter for the court to conclude its order by directing that the action be dismissed as to Ralston. It did not do so. There may be a factual issue as to Ralston's standing as a good faith purchaser without notice. At least before this court undertakes to rule on the action of the trial court, it is entitled to know the extent of the ruling.

Although not directly on point, the following language is instructive:

> Without clarifying language, such as "based on the evidence presented at trial, the court finds," or "due to the parties' failure to comply with the court's order concerning written closing arguments, the court finds," the 1987 dismissal order is susceptible to the two reasonable interpretations suggested by the parties. On one hand, the 1987 dismissal order may be interpreted as a sanction for noncompliance with the trial court's progression order for disposition of the case, while, on the other hand, the order, entered after conclusion of all the evidence, may have been a disposition on the merits. "Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings."

*Kerndt v. Ronan, ante* p. 26, 31, 458 N.W.2d 466, 470 (1990).

We hold that the order as it appears is not a final order and is not appealable and that this court is without jurisdiction to hear

the matter. Accordingly, the appeal is ordered dismissed.

APPEAL DISMISSED.

CAPORALE, J., concurring.

I write separately to express two concerns. First, whatever the second order entered by the district court may be, it is not an "order nunc pro tunc." The office of such an order is to correct clerical errors, not to correct judicial errors or otherwise change judicial determinations, even if unintended. *Interstate Printing Co. v. Department of Revenue, ante* p. 110, 459 N.W.2d 519 (1990); *IAFF Local 831 v. City of No. Platte*, 215 Neb. 89, 337 N.W.2d 716 (1983); *Continental Oil Co. v. Harris*, 214 Neb. 422, 333 N.W.2d 921 (1983). It is obvious the second order did not correct a clerical error; it merely reflected a change in the district court's mind. While the district court has the right, under such circumstances, to modify or vacate its interlocutory rulings in a pending action, it may not properly do so through the guise of a purported order nunc pro tunc. *Interstate Printing Co. v. Department of Revenue, supra; IAFF Local 831 v. City of No. Platte, supra; Continental Oil Co. v. Harris, supra.*

That having been written, I turn to my other, and perhaps more important, concern. Whatever the second order may be, First Westside Bank had to deal with it. While I agree with the determination that the order is not appealable, I certainly understand that Westside would resolve any doubt it may have had in that regard in favor of making this particular trip, for although a litigant suffers no legal harm by arriving at this tribunal early, it forever forfeits its right to appellate review if it arrives late. See, *In re Interest of K.D.B.*, 233 Neb. 371, 445 N.W.2d 620 (1989); *Sederstrom v. Wrehe*, 215 Neb. 429, 339 N.W.2d 74 (1983).

Thus, I wonder what happened to the time-honored practice of permitting a motion for new trial relating to orders of questionable appealability to pend until adjudication of all remaining aspects of the case, at which point all questions were appealed? Such a practice not only saved judicial time, it spared the litigant's purse.

I am not unmindful that in an effort to prod the few dilatory members of our profession, on either side of the bench, to

timely action, this court adopted case progression standards and requires judges to report and explain matters under submission for more than 90 days. See Canon 3 and Appendix A of the Code of Judicial Conduct (1987). This circumstance does not, however, provide me with an understanding of how delaying a questionable appeal with respect to a limited aspect of a case delays resolution of the entire case. Indeed, the opposite is true. The notice of appeal removing jurisdiction over this litigation to this court was filed on December 12, 1988. During the 2 years intervening between that filing and the filing of the majority's opinion, the world, so far as this litigation is concerned, stood still. What an expensive waste!

A legitimate variation from a standard can be explained and, thus, the progression rules applied thoughtfully in a manner which will achieve, rather than frustrate, their purposes. I suggest we revisit our old practice.