EDWARD W. LARSEN ET AL., APPELLEES, V. FIRST BANK, FORMERLY KNOWN AS FIRST WESTSIDE BANK, A NEBRASKA BANKING CORPORATION, APPELLANT.

515 N.W.2d 804

Filed May 20, 1994.   No. S-92-1010.

Ruth Anne Evans for appellant.

Raymond R. Aranza, of Marks & Clare, for appellees.

HASTINGS, C.J., BOSLAUGH, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

This is the second appearance of this matter in this court, the

first having resulted in a dismissal for the lack of a final order, as reported in *Larsen v. Ralston Bank*, 236 Neb. 880, 464 N.W.2d 329 (1991) (*Larsen I*). Herein, the plaintiffs-appellees, Edward W. Larsen, Carmelita A. Larsen, Candice Marie Larsen Ishii, Dennis E. Larsen, and Linda Marie Larsen, allege that the defendant-appellant, First Bank, formerly known as First Westside Bank, converted a certain note in which the aforenamed Larsens had a security interest by breaching an agreement to protect said interest. The district court granted the Larsens a partial summary judgment, holding First Bank liable, and subsequently sustained the Larsens' motion for a directed verdict made at the close of all the evidence at the trial on the issue of damages. First Bank appealed to the Nebraska Court of Appeals, assigning as errors, in summary, the district court's (1) failing to sustain its plea in abatement, (2) granting the Larsens a summary judgment on the issue of liability, and (3) directing a verdict in favor of the Larsens in the sum of $34,900.19. In order to regulate the caseloads of the appellate courts, we, on our own motion, removed the case to this court and now affirm the judgment of the district court.

## II. FACTS

There are two facets to the relevant facts in this matter, (1) the transactional aspects and (2) those dealing with procedural matters.

### 1. TRANSACTIONAL ASPECTS

The Larsens held 50 percent of the common stock in Roger L. Hass, Inc., a dissolved Nebraska corporation, in which the other 50 percent of the stock was held by Roger Hass. In 1982, the Hass corporation sold substantially all of its assets to Financial Service Company, which, in addition to paying $50,000 in cash, executed a promissory note payable to the order of the Hass corporation in the sum of $159,052.50. The note incorporated the provisions of an agreement between Financial Service and Roger Hass and recited that said agreement provided for the cancellation and satisfaction of the note without payment, should certain events come to pass.

Although the Larsens, as owners of half of the Hass corporation's stock, were entitled to half of the $50,000, Roger

Hass kept it all. He later, on August 16, 1982, assigned "all [his] right, title, and interest" in the Financial Service note to First Bank as security for an unrelated personal loan.

On January 10, 1983, Roger Hass executed three promissory notes payable to the Larsens in the amounts of $25,000, $13,564, and $5,481.51. The $25,000 note represented the Larsens' share of the cash Financial Service had paid toward the purchase of the assets of the Hass corporation. The other two notes were related to amounts Roger Hass owed the Larsens on other dealings.

In order to secure his notes to the Larsens, Roger Hass, in April 1983, executed in their favor a junior assignment of his 50-percent "beneficial interest" in the proceeds from the Financial Service promissory note "subject to a previous pledge dated August 16, 1982, by [the Hass corporation] to [First Bank]." Also executed was an agreement entitled "Junior Pledge Agreement for Security," which recites that it was entered into by "the Common SHAREHOLDERS OF [the Hass corporation] and [First Bank]." The document bears First Bank's signature and was signed twice by Roger Hass, once in his individual capacity and once as the president of the Hass corporation. The signature "Edward Larsen" appears in only one place under the word "ATTEST" and over the word "Secretary." However, a certificate executed by a notary public recites that "Edward W. Larsen," secretary of the Hass corporation, acknowledged that the instrument constituted the "voluntary act and deed" of the corporation and of "Edward W. Larsen, as an individual."

After reciting Roger Hass' obligations to the Larsens, the existence of his notes to the Larsens, and the respective interests of the Larsens and Roger Hass in the Hass corporation prior to the sale of its assets, the junior pledge agreement recognizes the Larsens' second lien on Roger Hass' 50-percent interest in the proceeds of the Financial Service note which was specifically made junior to Roger Hass' pledge to First Bank. It further declares it to be the intention and understanding of the parties that all the proceeds received from Financial Service be distributed pro rata to the shareholders pursuant to their respective percentages of stock ownership. First Bank agreed

that as a condition precedent to the effectiveness of the pledge given by the Hass corporation on August 16, 1982, the Larsens' 50-percent interest would not be encumbered or set off against any prior debts it was owed by the Hass corporation or Roger Hass personally and that it would not jeopardize the second lien the Larsens held on Roger Hass' beneficial interest in the note.

Although the record does not contain any assignment to First Bank of the Hass corporation's interest in the Financial Service note, both the junior pledge agreement and Roger Hass' junior assignment of his beneficial interest in the Financial Service note to the Larsens recite that the Hass corporation made such an assignment.

Undaunted by his existing debt, Roger Hass, in February 1985, executed two promissory notes to Ralston Bank for a total of $12,500, which were secured by a deed of trust on his home. Sometime prior to April 23, 1986, Roger Hass sold his home and asked Ralston Bank to release the deed of trust, offering to assign his interest in the Financial Service promissory note as collateral. An officer of Ralston Bank contacted First Bank and was assured, notwithstanding the existence of the above-described junior pledge agreement, that if the First Bank debt were paid, there would be no prior liens or claims on Roger Hass' 50-percent interest in the proceeds of the Financial Service note.

On April 23, 1986, Roger Hass executed a $46,865.70 promissory note payable to Ralston Bank and an assignment of his interest in the Financial Service note. Of the proceeds, $13,583.22 was used to refinance Roger Hass' prior notes to Ralston Bank; the remaining $33,273.48 was paid to First Bank in discharge of its lien on Roger Hass' interest in the Financial Service note. The next day, at which time Roger Hass was $46,035.17 in debt to the Larsens, First Bank released its assignment of the Financial Service note and delivered the note to Ralston Bank. After obtaining possession of the note, Ralston Bank, using the note as security, lent Roger Hass an additional $12,969.35. At some point, as the consequence of proceedings had in *Larsen I*, Roger Hass' 50-percent beneficial interest in the payments from the Financial Service promissory note produced a payment of $54,164.22 to Ralston Bank.

The Larsens learned of Roger Hass' assignment of the Financial Service note to Ralston Bank sometime after the event, at which time the Larsens demanded that First Bank either deliver possession of the Financial Service promissory note to them or pay them its fair market value. Receiving neither, nor any funds from Roger Hass' 50-percent beneficial interest in the proceeds of the note, the Larsens, notwithstanding the existence of *Larsen I*, instituted this suit.

## 2. PROCEDURAL ASPECTS

Although the Larsens' petition herein makes no reference to the then pendency of *Larsen I* in this court, First Bank, before answering, filed a plea in abatement which called attention to that fact. Asserting that *Larsen I* involved "the same subject matter, a similar cause of action and . . . similar relief" as this case, the plea claimed that a decision in favor of First Bank in *Larsen I* would dispose of the present matter and thus asked that this case be abated and dismissed without prejudice, at the Larsens' cost.

Following a hearing of some nature not disclosed by the record, the district court found that *Larsen I* "would not settle the issues in dispute in this matter" and denied the plea.

Thereafter, First Bank filed an answer which, in addition to denying the material allegations in the Larsens' petition, asserted a variety of defenses, which are detailed in part III(2)(a) below. The Larsens did not reply to First Bank's answer.

## III. ANALYSIS

Having reviewed the transactional background and procedural setting of the case, we turn our attention to the summarized assignments of error.

### 1. PLEA IN ABATEMENT

In the first such assignment of error, First Bank challenges the district court's judgment by claiming that the plea in abatement should have been sustained.

Although Neb. Rev. Stat. § 25-806 (Reissue 1989) permits a defendant to demur when it appears on the face of a petition that "there is another action pending between the same parties

for the same cause," we have concluded that the statute does not preclude the filing of a common-law plea in abatement to bring to the attention of the court some fact or circumstance which is not disclosed on the face of the record, but which will defeat the particular action without absolutely and forever precluding or excluding a right of recovery in the plaintiff. *Kash v. McDermott & Miller*, 221 Neb. 297, 376 N.W.2d 558 (1985). While such a plea prevents unnecessary or vexatious litigation and thereby furthers the theory of civil procedure by avoiding multiple suits, see, *State ex rel. Pederson v. Howell*, 239 Neb. 51, 474 N.W.2d 22 (1991), and *Farmers State Bank v. Germer*, 231 Neb. 572, 437 N.W.2d 463 (1989), it is nonetheless considered dilatory and technical and as a rule is not favored by the courts. It will therefore generally not be sustained unless the party interposing it clearly shows that he or she is within its purpose. See, *Kash v. McDermott & Miller, supra*; *National Bank of Commerce T. & S. Assn. v. Shull*, 195 Neb. 590, 239 N.W.2d 505 (1976).

In order to prevail on such a plea, the cases must be the same, in the sense that the same rights are asserted and the same relief is sought which is founded on the same facts and on the same essential basis; in addition, the parties must be the same or such as represent the same interest. See, *State ex rel. Pederson v. Howell, supra*; *Kash v. McDermott & Miller, supra*; *National Bank of Commerce T. & S. Assn. v. Shull, supra*; *Richardson v. Opelt*, 60 Neb. 180, 82 N.W. 377 (1900).

The difficulty is that the record does not reveal what evidence, if any, the district court had before it when considering the plea. Given our rule, Neb. Ct. R. of Prac. 4A(1)a (rev. 1992), that on appeal the transcript shall contain the "pleadings upon which the case was tried, *as designated by the appellant*" (emphasis supplied), and given the fact that in *Larsen I* we were only asked to review a partial summary judgment granted in favor of First Bank, we do not even know the total status of *Larsen I* in the district court at that time.

As we have recently reaffirmed, it is incumbent upon the appellant to present a record which supports the errors assigned; absent such a record, the decision of the lower court will generally be affirmed. *Latenser v. Intercessors of the*

*Lamb, Inc., ante* p. 337, 513 N.W.2d 281 (1994). In the absence of a record, we cannot say the district court erred in denying the plea in abatement.

### 2. Summary Judgment on Liability

We thus move on to the second summarized assignment of error, in connection with which First Bank claims that the district court erred in granting the Larsens a partial summary judgment on the issue of liability (a) because by failing to file a reply, the Larsens admitted the defenses First Bank asserted, and (b) because, in any event, the Larsens failed to perfect their security interest in the Financial Service note.

Those claims are to be tested by the rule that in appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Larson v. Vyskocil, ante* p. 917, 515 N.W.2d 660 (1994); *Franksen v. Crossroads Joint Venture, ante* p. 863, 515 N.W.2d 794 (1994); *Schmidt v. Omaha Pub. Power Dist., ante* p. 776, 515 N.W.2d 756 (1994). As the analysis which follows will demonstrate, the liability issues are essentially contract issues. The construction of a contract is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Baker's Supermarkets v. Feldman*, 243 Neb. 684, 502 N.W.2d 428 (1993).

### (a) Failure to Reply

In its answer First Bank alleged, in summary, that (i) there was a failure of consideration for the junior pledge agreement; (ii) the Financial Service note is a general intangible; and (iii) the Larsens' losses were due to their own failure to file a financing statement and thereby perfect their security interest in the note

and the failure of Financial Service, which had notice of the Larsens' interest, to take steps to protect them. Citing Neb. Rev. Stat. § 25-842 (Reissue 1989), First Bank asserts that by their failure to file a reply, the Larsens are precluded from denying those "affirmative defenses"; that the defenses must thus be taken as true; and that as a consequence, First Bank is entitled to judgment.

Neb. Rev. Stat. § 25-811 (Reissue 1989) dictates that an answer contain a general or specific denial of each material allegation of the petition which the defendant controverts and "a statement of any new matter constituting a defense . . . ." Section 25-842 provides, in relevant part: "Every material allegation of . . . new matter in the answer not controverted by the reply, shall, for the purposes of the action, be taken as true." According to Neb. Rev. Stat. § 25-843 (Reissue 1989), a "material allegation in a pleading is one essential to the claim or defense which could not be stricken from the pleading without leaving it insufficient."

In considering the manner of pleading new matter in an answer, we wrote in *Cass Constr. Co. v. Brennan*, 222 Neb. 69, 72-73, 382 N.W.2d 313, 316-17 (1986):

> If a party intends to plead accord and satisfaction as a defense, the answer must contain allegations showing such intent, and the facts relied upon to establish the defense must be pled. [Citations omitted.] An answer sufficiently pleads accord and satisfaction when it contains or presents all of the elements of an accord and satisfaction, even if it does not use the terms accord and satisfaction and even if it could have been more technically or artfully drawn. [Citation omitted.] At a minimum, the defense of accord and satisfaction requires nothing more be pled than the payment and acceptance, on a mutual agreement, express or implied, of a certain sum of money in full settlement of a preexisting and previously disputed obligation.

Upholding the denial of a motion to amend an answer, we, in *Timmerman v. Hertz*, 195 Neb. 237, 238 N.W.2d 220 (1976), observed that an amendment should be well pled and that simply stating that there was an implied term in the contract

which the plaintiff had breached merely pled a legal conclusion which was insufficient to raise an issue of fact. And in *Lease Northwest v. Davis*, 224 Neb. 617, 400 N.W.2d 220 (1987), we held that pleading negligence or "wrongful failure" on the part of a guarantee did not sufficiently plead modification of the guaranty. In *Newman Grove Creamery Co. v. Deaver*, 208 Neb. 178, 302 N.W.2d 697 (1981), we observed that under our system of code pleading, a plaintiff is required to plead facts, not the theory of recovery, and that the pleading of legal conclusions is insufficient to raise an issue of fact. Nonetheless, reasoning that the pleading served to put the defendant on notice, we held that the conclusory assertion of duress as a defense to an action on a promissory note was adequate. It must be borne in mind, however, that in *Newman Grove Creamery Co.*, we were not concerned with whether the answer was such that in the absence of a reply, duress was to be deemed admitted.

The foregoing holdings are therefore in accordance with the requirement that a petition set forth sufficient facts to state a cause of action rather than merely state legal conclusions. *Security Inv. Co. v. State*, 231 Neb. 536, 437 N.W.2d 439 (1989); *Mangan v. Landen*, 219 Neb. 643, 365 N.W.2d 453 (1985); *Moore v. Puget Sound Plywood*, 214 Neb. 14, 332 N.W.2d 212 (1983). See, generally, Neb. Rev. Stat. §§ 25-804 and 25-807 (Reissue 1989).

Unfortunately, however, in *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964), we, in dicta, improvidently suggested that just pleading the facts without stating the conclusion would not be sufficient to raise the issue of contributory negligence.

To avoid continued confusion, that improvident language is now disapproved, and we reaffirm that in order to require a reply, a defendant alleging an affirmative defense must do so with factual specificity, rather than in conclusory legal terms. See *P. & R. C. & I. Co. v. Tamaqua Sch. Dist.*, 304 Pa. 489, 156 A. 75 (1931) (allegations in answer not denied by reply not deemed admitted where new matter relied on by defendant involved statement of legal grounds for defense rather than factual pleading). See, also, *Moore v. Prud. Ins. Co. of Amer.*, 342 Pa. 570, 21 A.2d 42 (1941); *Wilson & Gardner Co. v. Wilson*, 334 Pa. 289, 5 A.2d 575 (1939); *Arch v. Slovene Nat.*

*Bene. Society*, 156 Pa. Super. 64, 39 A.2d 290 (1944).

With that rule in mind, we direct our attention to the claims of defense asserted by First Bank.

### (i) Failure of Consideration

There is no question that the claimed failure of consideration is an affirmative defense which First Bank was obligated to plead or else forgo it as a basis of defense. See *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992). However, First Bank pled the defense in conclusory form, stating only that the junior pledge agreement is "void and unenforceable as to [First Bank] for the reason that it is not supported by any consideration." While in the absence of a motion for a more definite statement, such pleading is sufficient to raise lack of consideration as an issue, see *Newman Grove Creamery Co. v. Deaver, supra*, it is not, as we have seen, sufficient to stand admitted notwithstanding the Larsens' failure to file a reply.

### (ii) General Intangible Claim

First Bank next alleged that the "promissory note, a copy of which is attached to [the Larsens'] petition is a 'general intangible' as that term is defined [by statute]. No financing statement relating to the pledge of said note was filed at any time prior to April 23, 1986."

As the analysis which follows in part III(2)(b) below demonstrates, the nature of the Financial Service note is crucial, for if the note must be treated as a general intangible, the Larsens did not perfect their security interest in it, and First Bank might well be entitled to judgment as a matter of law.

The second sentence of this asserted defense is factually specific. However, the facts set forth are not in dispute; therefore, unless the first sentence is to be deemed admitted, thereby precluding a decision on the merits that the nature of the note is such that the Larsens did perfect their security interest in it, the asserted defense does not adversely affect the Larsens' cause.

The first sentence does not recite the factual basis on which the conclusion rests. It merely states the legal conclusion that the note is a general intangible. The sentence thus does not constitute a material allegation of new matter which, if not

controverted by a reply, must be deemed admitted. See § 25-842. Therefore, even if the two sentences together present an affirmative defense, a matter we do not decide, the Larsens' failure to reply did not admit it.

### (iii) Failure of Larsens and Financial Service to Act

We assume without analysis that by failing to reply, the Larsens admitted that they did not file a financing statement and that Financial Service did not act to protect them. Indeed, there was no dispute between the parties in that regard. The question is whether the admission mandates a judgment for First Bank. As the succeeding analysis demonstrates, it does not.

### (b) Perfection of Security Interest

We begin this phase of our analysis by considering First Bank's claim that there was no consideration for the junior pledge agreement on which the Larsens' cause is founded.

Sufficient consideration for a promise exists if there is any benefit to the promisor or any detriment to the promisee, and the benefit rendered need not be to the party contracting, but may be to anyone else at the contracting party's procurement or request. *Spittler v. Nicola, supra*; *Bock v. Bank of Bellevue*, 230 Neb. 908, 434 N.W.2d 310 (1989).

It need only be noted that under the junior pledge agreement, First Bank, in exchange for being permitted to continue to hold the Financial Service note, agreed to serve as a bailee for the benefit of the Larsens. The fact that First Bank was permitted to retain possession of the Financial Service note and thereby protect its security interest in it alone constitutes sufficient consideration for First Bank's promise to not jeopardize the Larsens' interest in the note.

While it is true that not all the Larsens signed the junior pledge agreement (for that matter, it is not clear that Edward Larsen did so in his individual behalf), we have held that if it appears by express stipulation or by reasonable intendment that the rights and interests of unnamed parties were contemplated and provision was being made for them, those not named as parties to a contract are third-party beneficiaries of it. *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686

(1992); *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983); *Dworak v. Michals*, 211 Neb. 716, 320 N.W.2d 485 (1982). The text of the junior pledge agreement makes clear that one of its purposes was to protect the Larsens' interest in the Financial Service note. Thus, their rights and interests were indeed contemplated and provided for. As a consequence, there can be no doubt that the Larsens are third-party beneficiaries of the junior pledge agreement.

That having been determined, we turn to First Bank's contention that the district court erred in failing to find that the Financial Service note, by virtue of having incorporated another agreement providing that the note could be canceled or satisfied without payment upon the happening of certain events, constituted a general intangible in which a security interest could only be perfected by the filing of a financing statement. As a consequence, according to First Bank, any loss suffered by the Larsens is a direct result of their failure to file a financing statement.

The question as to whether the Larsens perfected a security interest in the Financial Service note is controlled by article 9 of the Nebraska version of the Uniform Commercial Code. With an exception not relevant to our analysis, the article at the time of the execution of the junior pledge agreement applied, as it does now, "to any transaction (regardless of its form) which is intended to create a security interest in . . . documents, instruments, general intangibles, chattel paper [and] to security interests created by contract including pledge, assignment . . . intended as security." Neb. U.C.C. § 9-102 (Reissues 1980 & 1992).

First Bank is correct in its assertion that incorporation into the note of the agreement between Financial Service and Roger Hass described in part II above makes the note something other than an unconditional promise to pay and thus makes it something other than a "negotiable instrument," as defined in Neb. U.C.C. § 3-104 (Reissues 1980 & 1992). See *Aetna Cas. & Surety Co. v. Nielsen*, 217 Neb. 297, 348 N.W.2d 851 (1984), *overruled on other grounds, First Nat. Bank v. Bolzer*, 221 Neb. 415, 377 N.W.2d 533 (1985) (holding that guaranty agreement which lacked independent unconditional promise to

pay was not negotiable instrument).

However, that does not mean that the Financial Service note was or is a "general intangible," as First Bank claims. A general intangible was at the relevant time and continues to be defined as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money." Neb. U.C.C. § 9-106 (Reissues 1980 & 1992).

A document which is not a "negotiable instrument" might then and may now nonetheless qualify as an "instrument" which, unless the context of article 9 otherwise requires, then included and continues to include "a negotiable instrument . . . or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." Neb. U.C.C. § 9-105(1)(i) (Reissues 1980 & 1992).

Nonetheless, citing *Home Fed. Sav. & Loan Assn. v. McDermott & Miller*, 234 Neb. 11, 449 N.W.2d 12 (1989), First Bank argues that we have previously held that rights to payment under a written contract for the sale of a business which is pledged as collateral pursuant to a security agreement are general intangibles. *Home Fed. Sav. & Loan Assn.* indeed held as First Bank represents. However, in that case there was no separate note as there is here; all that was at issue was the rights arising under an installment sales agreement.

First Bank also directs our attention to *Crichton v. Himlie Properties*, 105 Wash. 2d 191, 713 P.2d 108 (1986), which was cited in *Home Fed. Sav. & Loan Assn.*, and several cases from other jurisdictions which hold that a seller's rights under a contract for the conveyance of real estate are general intangibles. *In re Holiday Intervals, Inc.*, 931 F.2d 500 (8th Cir. 1991); *In re Himlie Properties, Inc.*, 36 B.R. 32 (W.D. Wash. 1983); *In re S.O.A.W. Enterprises, Inc.*, 32 B.R. 279 (W.D. Tex. 1983); *Cascade Security Bank v. Butler*, 88 Wash. 2d 777, 567 P.2d 631 (1977). But those cases focus upon various factors, including the executory nature of a contract for the conveyance of the real estate, the lack of a separate distinct promissory note, and the fact that an instrument cannot contain a security agreement which an installment contract for the sale of land

usually does. For these various reasons, the courts deciding the foregoing cases in essence held that the documents involved were not instruments because they were not of a type which are "in ordinary course of business transferred by delivery." § 9-105(1)(i). Those decisions thus give us no guidance in resolving the issue before us.

There are, however, a number of cases not involving installment or executory contracts for the sale of real estate which hold that a promissory note not qualifying as a negotiable instrument was nonetheless an instrument within the purview of article 9. E.g., *In re Kelly Group, Inc.*, 159 B.R. 472 (W.D. Va. 1993); *In re Coral Petroleum, Inc.*, 50 B.R. 830 (S.D. Tex. 1985); *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 774 P.2d 919 (1989); *Berkowitz v. Chavo Intl.*, 74 N.Y.2d 144, 542 N.E.2d 1086, 544 N.Y.S.2d 569 (1989), *reargument denied* 74 N.Y.2d 893, 547 N.E.2d 105, 547 N.Y.S.2d 850. But see *Union Investment v. Midland-Guardian Co.*, 30 Ohio App. 3d 59, 506 N.E.2d 271 (1986) (without discussion or analysis holds nonnegotiable promissory note to be general intangible).

We conclude that a separate promissory note which is not a negotiable instrument may nonetheless be an instrument and hold, as the district court implicitly did, that the Financial Service note is an instrument and not a general intangible.

The distinction is an important one, for to perfect a security interest in a general intangible, one was at the relevant time, and still is, required to file a financing statement. Neb. U.C.C. §§ 9-106 and 9-302 (Reissues 1980 & 1992). However, with certain exceptions not involved here, the only way one could then, or can now, perfect a security interest in an instrument is by taking possession of the document. Neb. U.C.C. § 9-304(1) (Reissues 1980 & 1992). Additionally, so far as is relevant, Neb. U.C.C. § 9-305 (Reissues 1980 & 1992) provided and provides: "A security interest in . . . instruments . . . may be perfected by the secured party's taking possession of the collateral. If such collateral . . . is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest."

The net effect of §§ 9-304 and 9-305, then, is to permit a

bailee to take possession of an instrument for the benefit of a secured party. Here, First Bank perfected its superior security interest in the Financial Service note by taking possession of it on its own behalf and then agreed that as a condition precedent to the effectiveness of the prior pledge given it by the Hass corporation, it would not jeopardize the junior lien held by the Larsens. It thereby committed itself to possess the note not only on its own behalf, but as a bailee for the benefit of the Larsens. That agreement necessarily required that once First Bank had recovered its debt, it would deliver the Financial Service note to the Larsens or come to some other arrangement with them. First Bank simply ignored the existence of its agreement with the Larsens and breached it by giving possession of the note to Ralston Bank without any regard for the Larsens' security interest in it.

Accordingly, there is no merit to the second summarized assignment of error.

### 3. DIRECTED VERDICT

In the third and last summarized assignment of error, First Bank claims that if the evidence establishes any damages at all, it sets them at $13,583.22, the amount Ralston Bank lent Roger Hass on April 24, 1986, above and beyond the sum used to refinance his obligation to First Bank.

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994); *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993); *Humphrey v. Nebraska Public Power Dist.*, 243 Neb. 872, 503 N.W.2d 211 (1993); *Sell v. Mary Lanning Memorial*

*Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993).

This also is an appropriate place to recall that in a breach of contract case, the ultimate objective of a damages award is to put the injured party in the same position the injured party would have occupied if the contract had been performed, that is, to make the injured party whole. *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 502 N.W.2d 444 (1993). See, also, *Properties Inv. Group v. JBA, Inc.*, 242 Neb. 439, 495 N.W.2d 624 (1993); *Wells Fargo Alarm Serv. v. Nox-Crete Chem.*, 229 Neb. 43, 424 N.W.2d 885 (1988); *Stansbery v. Schroeder*, 226 Neb. 492, 412 N.W.2d 447 (1987).

First Bank's position, that the damages are limited to the cash amount Ralston Bank loaned Roger Hass on April 24, 1986, overlooks that but for First Bank's breach of the junior pledge agreement resulting in delivery of the Financial Service note to Ralston Bank, Ralston Bank would not have had possession of the note, which is what it relied on in advancing further credit to Roger Hass.

The district court's calculation properly took into account the principal and interest due on the Financial Service note as of the date it was transferred to Ralston Bank, the value of Roger Hass' beneficial interest in it, and the amount paid to First Bank.

There is, therefore, no more merit to this last summarized assignment of error than there was in the previous two.

## IV. JUDGMENT

As a consequence, the judgment of the district court is, as first noted in part I, affirmed.

AFFIRMED.

WHITE, J., not participating.