[No. B040597. Second Dist., Div. Five. July 27, 1990.]

HOWARD E. WILSON, SR., Individually and as Administrator, etc., et al., Plaintiffs and Appellants, v.
BLUE CROSS OF SOUTHERN CALIFORNIA et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of part V.

**COUNSEL**

Weissburg & Aronson, Peter Aronson, James R. Kalyvas and Stephen M. Levine for Plaintiffs and Appellants.

Rosato & Samuels, Cary S. Samuels, Michael Schloss, Gronemeier, Barker & Huerta, Neil J. Barker, Gail Ivens, Schaffer & Lax, Steven A. Lax and Jeannette L. Viau for Defendants and Respondents.

**OPINION**

**TURNER, J.—**

### I.   INTRODUCTION

On March 1, 1983, Howard Wilson, Jr. (the decedent), was admitted to College Hospital in Los Angeles while suffering from major depression, drug dependency, and anorexia. His treating physician determined that he needed three to four weeks of in-patient care at the hospital. On March 11, 1983, through its agents, the decedent's insurance company announced that it would not pay for any further hospital care. Because nobody could afford to pay for any further in-patient hospital care, the decedent was discharged

from College Hospital. On March 31, 1983, the decedent committed suicide. Because a triable issue exists as to whether the conduct of the decedent's insurance company and certain related entities was a substantial factor in causing the decedent's death, we conclude that the trial court incorrectly granted the summary judgment motions.

## II. RESOLUTION OF PRINCIPAL LEGAL ISSUE

This is an appeal from several judgments imposed following orders granting summary judgment motions brought by four defendants. The orders granting summary judgment were premised upon the application of the holding of *Wickline* v. *State of California* (1986) 192 Cal.App.3d 1630 [239 Cal.Rptr. 810], a decision of this division. In *Wickline,* this court filed a published opinion in 1986, the Supreme Court granted review, and in 1987 the opinion was reprinted for tracking purposes at 192 Cal.App.3d 1630. On July 30, 1987, our Supreme Court dismissed review and ordered the matter transferred to this court pursuant to rule 29.4(c), California Rules of Court. The Supreme Court ordered that the opinion be published in the official reports and the opinion remains published at 192 Cal.App.3d 1630. In its transfer and publication order of July 30, 1987, the Supreme Court referred to rule 978(c) of the California Rules of Court which provides, "An order of the Supreme Court directing publication of an opinion in the Official Reports shall not be deemed an expression of opinion by the Supreme Court of the correctness of the result reached by the decision or of any of the law set forth in the opinion."

Unlike a normal opinion where procedural and factual matters are initially developed, this case lends itself to the resolution of the key legal issue at the outset—the extent to which *Wickline* extends beyond the context of Medi-Cal patients to an insured under an insurance policy issued in the private sector. Because *Wickline* should be limited to its facts and the legal issues properly decided in that case, it may not serve as a basis for the orders granting the summary judgment motions filed in this case.

### A. The *Wickline* Decision

In *Wickline,* the plaintiff was a Medi-Cal patient who was hospitalized. Her physician sought Medi-Cal authorization for an additional eight-day period of hospitalization but a board-certified surgeon employed as a consultant by Medi-Cal authorized payment for only four additional days of hospitalization. As a result, her principal treating physician, with the concurrence of two other treating doctors, discharged plaintiff after four additional days of hospitalization. (*Wickline* v. *State of California, supra,* 192 Cal.App.3d at pp. 1636-1637.) The plaintiff's principal treating physician

did not utilize a reconsideration procedure within the Medi-Cal funding process to seek an additional extension of benefits for further hospitalization. All of the expert opinion testimony indicated that the discharge decision "was . . . within the standards of practice of the medical community . . . ." (*Id.* at pp. 1640, 1646.) After her discharge, the plaintiff in *Wickline* experienced further medical problems which led to the loss of her leg.

The *Wickline* court analyzed various statutory and administrative rules which authorized the denial of Medi-Cal benefits under particular circumstances. Provisions of former Welfare and Institutions Code section 14000 required, in part, that Medi-Cal funding for acute care be available to the poor " 'whenever possible and feasible . . . , to the extent practical, . . . to secure health care in the same manner employed by the public generally . . . .' " (*Id.* at p. 1646.) The former provisions of 22 California Administrative Code section 51110 stated that the determination of need for acute care " 'shall be made in accordance with the usual standards of medical practice in the community.' " (*Id.* at p. 1645.) Finally, the decision to withhold funding was made in full compliance with the provisions of the California Administrative Code (now California Code of Regulations) and the Welfare and Institutions Code which permitted a Medi-Cal consultant to review requests by a private health care provider for Medi-Cal funding for a patient and, in appropriate cases, to deny Medi-Cal benefits. (*Id.* at pp. 1646-1647.)

### B. The Three Key Elements of *Wickline*

In essence, *Wickline* is a case involving three key legal and factual components. First, as a matter of law, the discharge decision met the standard of care for physicians. This is of particular importance given the fact that the Medi-Cal standard for determining whether to provide acute care was essentially the same as the standard of care for physicians.

Second, the funding process was not pursuant to a contract; rather, the determination as to whether the state had a duty to provide funds was made pursuant to statute and provisions of the California Administrative Code. These statutes and regulations altered the normal course of tort liability set forth in Civil Code section 1714 which provides that " '[e]very one is responsible, not only for the result of his [or her] willful acts, but also for an injury occasioned to another by his [or her] want of ordinary care or skill . . . .' " (*Id.* at p. 1643.) Citing *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], the *Wickline* court noted: "Rephrased, it establishes the general rule that ' "[a]ll persons are required to use ordinary care to prevent others being injured as a result of their conduct." ' And, ' "in the absence of statutory provision [*sic*] declaring

an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." ' " (*Wickline* v. *State of California, supra*, 192 Cal.App.3d at p. 1643.) The public policy identified by the *Wickline* court which constituted an exception to Civil Code section 1714 were the provisions of statutory and regulatory law which permitted the state to deny Medi-Cal benefits when to do so was " 'in accordance with the usual standards of medical practice in the community.' " (*Id.* at p. 1645.) As noted previously, in *Wickline,* all of the physicians who testified stated that the discharge decision fell within the standard of practice. The *Wickline* court correctly concluded that the public policy as expressed in the Welfare and Institutions Code and title 22 of the California Administrative Code constituted an exception to the usual standard of tort liability specified in Civil Code section 1714. As will be noted, no such statutory and regulatory scheme is present in the case at bar and the general rule of tort liability set forth in Civil Code section 1714 must apply to the parties in this case.

Third, *Wickline* was not a case where a cost limitation program such as the Medi-Cal review process was "permitted to corrupt medical judgment." (*Wickline* v. *State of California, supra*, 192 Cal.App.3d at p. 1647.) The *Wickline* court emphasized that a patient "who requires treatment and who is harmed when care which should have been provided is not provided should recover for the injuries suffered from all those responsible for the deprivation of such care, including, when appropriate, health care payors." (*Id.* at p. 1645.) As will be noted, none of these three factors were directly applicable to any of the summary judgment motions in the present case. Therefore, the holding of *Wickline* does not extend to this present case.

### C.   The *Wickline* Dicta

Before proceeding to evaluate the three summary judgment motions in this case, an additional comment is in order concerning *Wickline.* The moving parties in the trial court in their papers focused on language in *Wickline* which must frankly be categorized as dicta. For example, the opinion states: "However, the physician who complies without protest with the limitations imposed by a third party payor, when [her or] his medical judgment dictates otherwise, cannot avoid his [or her] ultimate responsibility for [her or] his patient's care. He [or she] cannot point to the health care payor as the liability scapegoat when the consequences of [her or] his own determinative medical decisions go sour." (192 Cal.App.3d at p. 1645.)[1]

---

[1] The language utilized at this point in the *Wickline* opinion is somewhat confusing. *Wickline* was not a case where a physician attempted to "point to the health care payor as the liability scapegoat . . . ." (*Ibid.*) None of the physicians in *Wickline* were parties to the lawsuit. The suit was brought by a Medi-Cal patient against the State of California for negligently

This broadly stated language was unnecessary to the decision and in all contexts does not correctly state the law relative to causation issues in a tort case. On another occasion in the opinion, after noting that all of the expert trial testimony indicated that it was the physician's duty to determine whether to discharge a patient, the court concluded "The decision to discharge is, therefore, the responsibility of the patient's own treating physician."[2] (*Ibid.*) The legitimate rationale of *Wickline* was that the normal tort responsibility principles in Civil Code section 1714 were modified by the provisions of the California Administrative Code and the Welfare and Institutions Code so that a Medi-Cal recipient was entitled to medical care within " 'the usual standards of medical practice in the community' " (*ibid.*), and that the discharge decision in that case fell within the standard of medical practice. The language in *Wickline* which suggests that civil liability for a discharge decision rests solely within the responsibility of a treating physician in all contexts is dicta.

## III. The Issues Raised by the Pleadings

The third amended complaint contains three causes of action which arise out of the March 31, 1983, death of the decedent. Plaintiff Howard E. Wilson, Sr., as the special administrator of the decedent's estate as well as his wife, the decedent's mother, filed suit against Blue Cross and Blue Shield of Alabama (Alabama Blue Cross), Blue Cross of Southern California and Blue Cross of California (California Blue Cross), Western Medical Review Organization, Area 23 doing business as Western Medical Review (Western Medical) and Dr. John Wasserman (Dr. Wasserman), a physician and employee of Western Medical. The first cause of action alleged that Alabama Blue Cross and California Blue Cross tortiously breached an insurance contract. Further, it was alleged that there was an insurance contract between the decedent and Alabama Blue Cross and through an entity entitled "Inter-Plan Service Benefit Bank," California Blue Cross was obligated to provide the benefits of the insurance contract between Alabama Blue Cross and the decedent. The contract provided in-patient hospital benefits under the following clause: "INPATIENT HOSPITAL SERVICE. [¶] While a Member is covered under this Contract and is a registered bed patient in a Hospital, and during such time (subject to the limitations, exclusions, and conditions prescribed elsewhere herein) as the Member's attending Physician determines that hospitalization is necessary, such Member shall be entitled to the following benefits, herein referred to as Hospital Service . . . ." Benefits for

discontinuing her Medi-Cal benefits. (*Id.* at p. 1633.) It was the patient who was assigning liability to the payor for failure to pay benefits, not a physician.

[2] In the present case, as will be described in detail later, there was substantial evidence that the only reason that the decedent left the hospital was the refusal of his insurance company to pay insurance benefits.

mental and nervous disorders were provided under the following clause in the insurance contract: "BENEFITS FOR MENTAL AND NERVOUS DISORDERS OR FOR PULMONARY TUBERCULOSIS. Benefits hereunder for mental and nervous disorders or for pulmonary tuberculosis shall be limited to an aggregate of thirty (30) days during any period of twelve (12) consecutive months."

It was also alleged that California Blue Cross and Alabama Blue Cross hired Western Medical for purposes of "denying payment for medically necessary hospitalization" and that nothing in the insurance contract allowed for review by an outside entity of an attending physician's conclusion that hospitalization was necessary. The third amended complaint also alleged that this review by Western Medical was made utilizing federal Medi-Care regulations. As a result of the medical review conducted by a nurse and Dr. Wasserman, Alabama Blue Cross and California Blue Cross tortiously violated the contract by informing the decedent, the hospital administrator where the decedent was being treated, and the decedent's treating physician that the decedent would not be reimbursed for further medical treatment. As a result of this tortious contract breach, it was alleged that defendant was denied medical treatment and this was a proximate cause of his death.

The second cause of action was against Western Medical for inducing a breach of contract between Alabama Blue Cross and the decedent. The third cause of action was against all defendants for wrongful death. The third amended complaint alleged that all of the defendants were agents of one another and that they were negligent in selecting one another as their agents. Also, it was alleged that the defendants knew that the decedent needed additional care, his attending physician had determined that up to four weeks of further care was necessary, the decedent had no other funds, and that defendants' course of conduct resulted in the premature termination of needed medical treatment which proximately caused the decedent's death.

### IV. THE WESTERN MEDICAL, DR. WASSERMAN, AND ALABAMA BLUE CROSS SUMMARY JUDGMENT MOTIONS

#### A. Defendants' Separate Statement

Western Medical, Dr. Wasserman, and Alabama Blue Cross submitted a terse separate statement of undisputed facts which identified four "issues" and cited to four separate pieces of evidence in support of the summary judgment motion. The evidence cited in the separate statement indicated that on March 1, 1983, the decedent admitted himself to College Hospital

because of mental and drug addiction problems and that his attending physician was Dr. Warren R. Taff. Dr. Taff made the decision to discharge the decedent on March 11, 1983, and did not file an appeal of a utilization review[3] determination made by Western Medical. The points and authorities submitted by Western Medical and Dr. Wasserman made reference to other facts than those contained in the separate statement. Code of Civil Procedure section 437c, subdivision (b) requires that the facts to be relied upon by the court in passing on a summary judgment motion be set forth in the separate statement.

## B.  Plaintiffs' Separate Statement

In contrast to the foregoing sparse evidentiary showing made by the three moving parties, plaintiffs submitted a separate statement containing an extensive array of facts. The evidence submitted by plaintiffs indicated that the Alabama Blue Cross policy which covered the decedent had no provisions for concurrent utilization review. Western Medical and Dr. Wasserman knew that Alabama Blue Cross covered the decedent. In 1983, Alabama Blue Cross delegated authority to California Blue Cross to adjust claims through the Inter-Plan Bank and in 1983 Western Medical contracted with California Blue Cross to perform "utilization review of the 'medical necessity'" of hospitalizations of all Blue Cross insureds. Western Medical had no contract with Alabama Blue Cross. Western Medical performed concurrent utilization reviews of the "medical necessity" for Blue Cross insureds at College Hospital in March 1983.

The decedent was admitted to College Hospital on March 1, 1983, for major depression and loss of 20 pounds in 2 months. Dr. Taff's treatment plan called for the decedent to remain hospitalized for three to four weeks. Dr. Taff believed that "reasonable treatment" of the decedent required inpatient treatment on March 11, 1983. In 1983, Western Medical applied federal Medi-Care utilization review standards to private insurance patients. Prior to March 11, 1983, Dr. Taff was impressed with the decedent's prognosis. However, he was informed by Western Medical that the decedent's stay was "not justified or approved." In Dr. Taff's opinion the decedent required further in-patient treatment and the appropriate medical care could not be provided on an out-patient basis. Dr. Taff testified that it was reasonably probable to assume that there was a "reasonable medical proba-

---

[3] The process by which an insurance company determines during a hospital stay whether to terminate the payment of benefits is called utilization review, concurrent utilization review, or, as it was termed in *Wickline*, prospective utilization review. (192 Cal.App.3d at p. 1633.)

bility" that the decedent would have been alive if his hospital stay had not been prematurely terminated.

Dr. Taff informed the decedent of Western Medical's decision "that the patient did not meet the admission criteria for his particular insurance policy and that his further stay was not justified or approved." The decedent was informed that he would "not be covered financially by his insurance company and that the liability [for hospital costs] would then be his." The decedent was "not happy with the decision. . . ." The decedent cried while talking to an aunt about the determination that he was to be released from the hospital because the insurance company would not pay for the benefits. The decedent's aunt testified at her deposition that the family did not have enough money to pay for the cost of in-patient hospitalization. Dr. Taff told the aunt of the decedent "to come and get him." Dr. Taff told the decedent's mother and father that Western Medical "terminated his [the decedent's] stay" and the decedent's father was told that this was a "problem" that had occurred on other occasions.

### C. The Motions Were Incorrectly Granted

#### 1. Standard of Review

■ The standard for appellate review of a summary judgment motion was set forth by our Supreme Court as follows: "Summary judgment is a drastic measure that deprives the losing party of a trial on the merits. [Citation.] It should therefore be used with caution, so that it does not become a substitute for trial. [Citation.] The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. [Citation.] [¶] A defendant is entitled to the summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) ■ On appeal, review by this court is "limited to determining upon a de novo examination whether there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law." (*Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399, 1401 [239 Cal.Rptr. 916].)

## 2. Dr. Wasserman and Alabama Blue Cross

■ The order granting summary judgment as to Dr. Wasserman and Alabama Blue Cross must be reversed. Neither Dr. Wasserman nor Alabama Blue Cross is mentioned in defendants' separate statement of undisputed facts. Code of Civil Procedure section 437c, subdivision (b) requires that the facts that are undisputed be set forth in the moving parties' separate statement. No evidence was presented which negated any alternative theory of liability presented by the pleadings. This contention was raised in the superior court. In the face of specific objections in the trial court raising this issue, the failure to even mention Dr. Wasserman and Alabama Blue Cross in the separate statement prevented summary judgment from being granted as to them.[4]

## 3. Western Medical

■ As to Western Medical, it contends that it is not liable under the authority of *Wickline.* In this regard, Western Medical raises three contentions. First, Western Medical argues that when a treating physician makes a decision to discharge a patient because an insurance company refuses to pay benefits, the sole liability rests with the physician.[5] This argument is premised on the language in *Wickline* which states that the exclusive responsibility for a discharge decision rests with the physician. (*Wickline* v. *State of California, supra,* 192 Cal.App.3d at p. 1645.) As we have previously noted, this language constitutes dicta because it was unnecessary for the decision on *Wickline.* The evidence in *Wickline* indicated that the denial of benefits as a matter of law was proper because the standard for determining whether to extend the term of the hospital stay, i.e., whether the standard of medical practice in the community required that care be provided, was satisfied.

However, apart from the fact that Western Medical's contention that it is not liable because all tort responsibility for the discharge rests exclusively with the treating physician is premised on dicta in *Wickline,* the argument is likewise invalid because it misconstrues the test for joint liability for tortious conduct. ■ The test for joint tort liability is set forth in section

---

[4] We expressly reverse the summary judgments entered on behalf of Dr. Wasserman and Alabama Blue Cross solely because they are never mentioned in the separate statement filed in support of the motions. However, we wish to emphasize that the reasons that warrant reversal of the order granting summary judgment entered on behalf Western Medical also apply equally to Alabama Blue Cross and Dr. Wasserman.

[5] All defendants raise this contention in varying ways.

431 of the Restatement of Torts 2d which provides, "The actors' negligent conduct is a legal cause of harm to another if (a) his [or her] conduct is a substantial factor in bringing about the harm, and, (b) there is no rule of law relieving the actor from liability because of the manner in which [her or] his negligence has resulted in the harm." (Rest.2d Torts, § 431.) Section 431 correctly states California law as to the issue of causation in tort cases. (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 503-504 [102 Cal.Rptr. 795, 498 P.2d 1043]; *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 242 [60 Cal.Rptr. 510, 430 P.2d 8].) ■ In the present case, there is substantial evidence that Western Medical's decision not to approve further hospitalization was a substantial factor in bringing about the decedent's demise. It was Western Medical which conducted the concurrent utilization review and directed that no further benefits be paid. No employee of Alabama Blue Cross or California Blue Cross made the decision to withhold further care. Western Medical used the concurrent utilization review process without knowledge as to whether the decedent's Alabama Blue Cross policy allowed for such review and the policy contained explicit language which provided that it was for the attending physician of the decedent to determine the length of in-patient hospitalization so long as the period of care did not exceed 30 days. Once the insurance benefits were terminated, there were no other funds to pay for the decedent's hospitalization. The sole reason for the discharge, based on the evidence adduced in connection with the summary judgment motion, was that the decedent had no insurance or money to pay for any further in-patient benefits. Dr. Taff, the decedent's treating physician, believed that had the decedent completed his planned hospitalization there was a reasonable medical probability that he would not have committed suicide. The foregoing constitutes sufficient evidence to raise a triable issue of material fact as to whether Western Medical's conduct was a substantial factor in causing the decedent's death.

■ Western Medical argues that it was entitled to summary judgment because there are important public policy considerations which warrant protecting insurance companies and related entities which conduct concurrent utilization review.[6] Western Medical cites language in *Wickline* which indicates that utilization review procedures involve "issues of profound importance to the health care community and to the general public." (*Wickline* v. *State of California, supra*, 192 Cal.App.3d at p. 1633.) Western Medical contends that the *Wickline* decision can be construed to extend an immunity to a health care payor which refuses to provide insurance benefits on the advice of an entity such as Western Medical because of "public policy" considerations which support the use of the concurrent utilization

---

[6] All defendants have raised this contention.

process. As noted previously in *Wickline* the court referred to the following general rule of law: "Rephrased, it establishes the general rule that ' "[a]ll persons are required to use ordinary care to prevent others being injured as a result of their conduct." ' And, ' "in the absence of statutory provision [*sic*] declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception shall be made unless clearly supported by public policy." ' " (*Id.* at p. 1643.) Therefore, Western Medical argues that the public policy considerations which favor the use of the concurrent utilization process should alter the normal rules of tort liability.

However, the normal basis of tort liability can only be departed from when "public policy clearly requires that an exception be made." (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 372 [182 Cal.Rptr. 629, 644 P.2d 822].) No such clear public policy exists to provide an immunity to Western Medical. In *Wickline,* there was a clearly expressed public policy reflected in the California Administrative Code and the Welfare and Institutions Code which mandated the use of a utilization review process. (*Wickline* v. *State of California, supra*, 192 Cal.App.3d at p. 1646.) Also in *Wickline,* there was a specific statute that provided for the denial of benefits to a person seeking acute hospital care when to do so was " 'in accordance with the usual standards of medical practice in the community.' " (*Id.* at p. 1645.) There is no similar clearly expressed public policy which applies to the decedent's contract with Alabama Blue Cross.[7]

■ Third, Western Medical argues that a treating physician must pursue avenues of appeal when insurance benefits are denied in the context of the utilization review process. In *Wickline,* there was testimony that the plaintiff's treating physician had a duty to file another request to extend her hospital stay when the Medi-Cal consulting physician only authorized a four-day rather than an eight-day extension of the initial period of acute care. (192 Cal.App.3d at p. 1639.) Based on this uncontradicted testimony, the court in *Wickline* later noted that the doctor who "complies without protest with the limitations imposed by a third party payor, when [her or] his medical judgment dictates otherwise, cannot avoid his [or her] ultimate responsibility for [her or] his patient's care." (*Id.* at p. 1645.) As noted

---

[7]All defendants argue that certain language in the decedent's policy allows for concurrent utilization review. Because this argument was " 'not fully developed or factually presented in the trial court,' " it may not be raised for the first time on appeal. (*City of Oceanside* v. *McKenna* (1989) 215 Cal.App.3d 1420, 1432 [264 Cal.Rptr. 275]; *Johanson Transportation Service* v. *Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 588 [210 Cal.Rptr. 433].) However, even if the Alabama Blue Cross policy could be construed as allowing for a concurrent utilization review, Western Medical has failed to prove that the denial of insurance benefits to the decedent was legally proper as a matter of law.

previously, this dicta has no application to this case. The present case involves a claim by a decedent's estate and relatives directly against insurance companies and their agents, not against a physician. In any event, the failure of Dr. Taff to follow an informal policy allowing for reconsideration by Western Medical did not warrant granting summary judgment. Not only is there a substantial controversy as to whether utilization review can be pursued under the terms of the decedent's policy, but no defendant has proven that such a reconsideration request would have been granted.[8] Also, there is a triable issue as to whether the refusal to allow the decedent to stay in the hospital was a "substantial factor" in bringing about his death and the availability of an avenue of appeal fails to prove as a matter of law that his demise was unrelated to his denial of benefits. In summary, *Wickline* is a different case from the present lawsuit. There remain triable issues of material fact as to Western Medical's liability for tortious interference with the contract of insurance between the decedent and Alabama Blue Cross and its role in causing the wrongful death of the decedent.

### V. The California Blue Cross Summary Judgment Motion*

. . . . . . . . . . . . . . . . . . . . .

### VI. CONCLUSION

As to all of the causes of action alleged against defendants, there are triable claims given the evidence cited in plaintiffs' separate statements. We realize that the trial court's decision to grant summary judgment in this case was heavily influenced by portions of the *Wickline* decision which quite frankly contained overbroad language and constituted dicta. However, it would be inappropriate for this court to allow errors in one of its own prior decisions to remain uncorrected in this case. When the trial court granted defendant's summary judgment motions, the summary issue adjudi-

---

[8]This is not a case where a contract describes an event that terminates a duty if the event occurs. The Restatement describes such a situation as follows: "[I]f under the terms of the contract the occurrence of an event is to terminate an obligor's duty . . . to pay damages for breach, that duty is discharged if the event occurs." (Rest.2d Contracts, § 230, subd. (1).) In this case, the event that is alleged to have occurred which terminated any duty to pay damages was the failure to have sought reconsideration of Western Medical's determination that decedent was not in need of hospitalization. No evidence was introduced that such a clause exists anywhere in any policy relied upon by any defendant and that the decedent had any knowledge of such a duty to seek reconsideration. The concept embodied in section 230 of the Restatement Second of Contracts is commonly referred to as a "condition subsequent." (1 Witkin, Summary of Cal. Law (9th ed. 1987) § 724, p. 656.)

* See footnote, *ante,* page 660.

cation motions became moot. Therefore, on remand, the trial court may rule on the summary issue adjudication motions.

## VII.   DISPOSITION

The judgments are reversed. This case is remanded and the trial court may rule on the summary issue adjudication motions. Plaintiffs are to recover their costs on appeal jointly and severally from all defendants.

Lucas, P. J., and Boren, J., concurred.

Respondents' petitions for review by the Supreme Court were denied October 11, 1990.