NANCY STEINEKE, APPELLANT, V. SHARE HEALTH PLAN OF
NEBRASKA, INC., APPELLEE.
518 N.W.2d 904

Filed July 15, 1994.   No. S-92-1115.

James R. Welsh, of Bradford, Coenen, Ashford & Welsh, for appellant.

Leo A. Knowles and Ronald G. Fleming, of McGrath, North, Mullin & Kratz, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

FAHRNBRUCH, J.

Nancy Steineke appeals the order of the district court for Douglas County granting summary judgment in favor of Share Health Plan of Nebraska, Inc. (Share), in her breach of contract action against Share.

We affirm the order of the district court.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994).

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

## FACTS

Giving Steineke the benefit of all reasonable inferences deducible from the evidence, as we are required to do, the facts of this case are as follows:

Share, at all times material to this case, was a Nebraska corporation authorized to operate a health maintenance

organization pursuant to Neb. Rev. Stat. § 44-3201 et seq. (Reissue 1988) (§ 44-3201 et seq. has since been replaced by the Health Maintenance Organization Act, Neb. Rev. Stat. § 44-3292 et seq. (Cum. Supp. 1992)). Steineke, an employee of Douglas County, was entitled to health care services provided by Share as a result of an agreement between Share and Douglas County.

The evening of September 30, 1987, Steineke entered the emergency room at Archbishop Bergan Mercy Hospital (Bergan) complaining of left lower abdominal pain. Steineke was seen the following day, October 1, by Dr. Robert Luby, who informed her that she had an ectopic pregnancy. An ectopic pregnancy is one in which a fertilized ovum develops outside the uterine cavity. Dorland's Illustrated Medical Dictionary 1349 (27th ed. 1988). It was ultimately determined that Steineke's fetus had implanted in her left fallopian tube.

Dr. Luby, who was a non-Share physician at that time, advised Steineke that emergency surgery was required. Dr. Luby scheduled the surgery to be done at Bergan that same day by a Share physician. In the surgery contemplated by Dr. Luby, the physician would remove the fetus and tissue from Steineke's fallopian tube in an attempt to preserve the tube so that a microsurgical technique could be used at a later time to repair the tube. Steineke's other fallopian tube had been removed in 1983 due to a prior tubal pregnancy.

Before Steineke was taken to surgery, a representative of Share telephoned Steineke at Bergan and informed Steineke that it was necessary for her to be transferred to University of Nebraska Medical Center (UNMC), where her primary physician was located. Steineke was told that if she chose to remain at Bergan, she would be responsible for the cost of her care.

Steineke was then transferred to UNMC by ambulance. At UNMC, Steineke was informed that the physicians at that facility would be unable to save either the fetus or her fallopian tube because "that procedure" was not done at UNMC. The record fails to reflect any evidence that Dr. Luby, Steineke, or any Share representative was aware at the time Steineke was transferred to UNMC that physicians at UNMC would be

unable to perform a procedure to attempt to save Steineke's fallopian tube such as the procedure contemplated by the physicians at Bergan. Before signing a written consent for surgery at UNMC, Steineke was told that neither her fetus nor her remaining fallopian tube could be saved. Surgery was performed, rendering Steineke permanently unable to conceive and bear children.

On April 3, 1990, Steineke sued Share, alleging in her petition that Share breached its contract to provide medical services to Steineke by "refusing to authorize the medical services of Bergen [sic] to be covered for the emergency medical problems of [Steineke], when the defendant Share, knew or should have known, that such services to be rendered to the plaintiff, as an emergency were covered by the [health care plan] with Share." Steineke requested damages for mental and physical pain and suffering, both past and future, as well as damages "by reason of her inability to conceive and bear children in the future."

The trial court subsequently sustained a motion by Share for summary judgment

> for the reason that no genuine issue of fact exists with respect to the issue of causation, and there is no genuine issue of fact that any act or omission of the Defendant had any causal relation to the damages claimed by the Plaintiff, which damages, to the extent that they seek recompense for pain and suffering and/or emotional distress, are not recoverable in a breach of contract claim as a matter of law.

Steineke timely appealed from that order. We removed the case from the Nebraska Court of Appeals pursuant to our authority to regulate the workload of the appellate courts of this state.

## ASSIGNMENT OF ERROR

Steineke's sole assignment of error on appeal is that the trial court erred in granting summary judgment for Share.

## ANALYSIS

Steineke argues that because of Share's actions in overriding the judgment of her physician, Dr. Luby, she lost the chance to

keep her one remaining fallopian tube intact and thus lost the chance to conceive and bear children through the breach of some contractual duty on the part of Share.

Share argues that any alleged breach of contract on its part was not the proximate cause of Steineke's damages, because there is a lack of evidence that Steineke's remaining fallopian tube could have been saved had her surgery been done at Bergan. Share also argues that subsequent intervening acts by the physicians at UNMC were the cause of Steineke's damages.

As to Steineke's loss of chance arguments, she has cited no authority, nor have we discovered any, that Nebraska recognizes loss of chance as a cause of action or as an element of damages in either tort or contract cases. We decline to adopt the loss of chance doctrine in this case, and therefore we do not address Steineke's loss of chance arguments.

Because the loss of chance theory is inapplicable to our analysis of this case, we are instead guided by principles of contract law as to Share's argument that any alleged breach of contract on its part was not the proximate cause of Steineke's alleged damages.

It is a basic concept that in any damage action for breach of contract the claimant must prove that the breach of contract complained of was the proximate cause of the alleged damages. In a breach of contract case there must be a causal relationship between the damages asserted and the breach relied upon. Proof which leaves this issue in the realm of speculation and conjecture is insufficient to support a judgment.

*Omaha P. P. Dist. v. Darin & Armstrong, Inc.*, 205 Neb. 484, 497, 288 N.W.2d 467, 474 (1980).

As to whether Share's alleged breach of contract was the proximate cause of Steineke's alleged damages, the rule is that the party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must furnish sufficient evidence to demonstrate that such movant is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. *Dalton Buick v. Universal Underwriters Ins. Co.*, 245 Neb. 282, 512 N.W.2d 633 (1994). After the movant has shown facts entitling it to

judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which, as a matter of law, prevents judgment for the movant. *Id.*

Share's evidence on the issue of proximate cause of Steineke's alleged damages was composed entirely of the deposition testimony of Dr. Luby entered into evidence by Share in support of its motion for summary judgment. Steineke joined in offering Dr. Luby's deposition, and offered no other expert evidence in opposition to Share's summary judgment motion.

Dr. Luby, Steineke's medical expert witness, testified in his deposition that in his opinion, there would have been a better chance of saving Steineke's fallopian tube had she remained at Bergan. However, Dr. Luby was unable to say with a reasonable degree of medical certainty whether Steineke's tube could have been saved.

Medical opinions must be based on reasonable medical certainty. *Caradori v. Frontier Airlines*, 213 Neb. 513, 329 N.W.2d 865 (1983). Accord, *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992); *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988).

The only permissible inference from the evidence is that Steineke's fallopian tube *possibly* could have been saved had she remained at Bergan for surgery. Medical testimony couched in terms of "possibility" is insufficient to support a causal relationship. See, e.g., *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991); *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981). See, also, *Fuglsang v. Blue Cross*, 235 Neb. 552, 456 N.W.2d 281 (1990) (holding that a medical opinion which is rendered on a 50-50 basis is no more than speculation and conjecture and that an inference favorable to claimant which can be reached only on the basis of possibility or speculation is insufficient to support an award for claimant).

In the absence of a showing by Steineke to a reasonable medical certainty that her alleged damages were proximately caused by Share's alleged breach of contract, Steineke has failed in her burden to present evidence creating an issue of material fact in this matter. Share is therefore entitled to judgment as a matter of law, and the district court correctly sustained Share's

motion for summary judgment. This finding being dispositive of the appeal, it is not necessary for us to discuss any other issues raised by the parties.

## CONCLUSION

Giving Steineke the benefit of all reasonable inferences deducible from the evidence, we find that there is no genuine issue of material fact and that Share is entitled to judgment as a matter of law. The order of the trial court sustaining Share's summary judgment motion is affirmed.

AFFIRMED.

WHITE, J., concurring.

The issue in this case is whether Steineke may recover damages representing the loss of her ability to conceive and bear children. I would recognize the loss of chance doctrine to the extent that it would allow recovery for the loss of the chance to conceive. I am, therefore, compelled to write separately from the majority opinion, and I concur only in its result.

The majority opinion necessarily recognizes loss of chance when the majority considers whether Steineke established a causal connection between appellee's breach and Steineke's alleged damages—the loss of the chance to conceive. To this extent, I respectfully contend that the opinion is inconsistent with its summary declaration that this jurisdiction will not recognize loss of chance as a cause of action or an element of damages in either contract or tort cases.

In this case, however, Steineke failed to present evidence raising a genuine issue of material fact that she had a chance to conceive and bear children. Specifically, Steineke could not establish to a reasonable degree of medical certainty that her fallopian tube could have been saved but for defendant's alleged breach. The inability to establish that the fallopian tube could have been saved eliminates Steineke's right to recover for the loss of the chance to conceive. In this respect I agree with the decision of the majority. If Steineke could have produced evidence of this element of her cause of action, I would hold that she should be allowed to recover for the loss of the chance to conceive.

WRIGHT, J., joins in this concurrence.

CAPORALE, J., dissenting.

In the first instance, I disagree with the majority's statement that this court has not recognized loss of chance as an element of damages in either tort or contract.

In *Washington v. American Community Stores Corp.*, 196 Neb. 624, 244 N.W.2d 286 (1976), a 24-year-old parole officer involved in a collision brought a personal injury action, claiming that his injuries prevented him from pursuing a wrestling career. While he had successfully competed in wrestling competitions at the high school and college levels and was characterized as a prime candidate for the U.S. Olympic team, there was no evidence that he would have been an Olympic wrestler or that he had been promised a job as a wrestling coach. This court nonetheless rejected the defendant's argument that the claim of damages was speculative and conjectural, as it rested on uncertain future possibilities and uncertain future happenings, and permitted the plaintiff to recover for the loss of earning capacity as a professional wrestler or coach.

Thus, it seems to me that wittingly or unwittingly, wisely or unwisely, this court has recognized loss of chance as an element of tort damages. Perhaps the majority opinion has, knowingly or otherwise, silently overruled *Washington*.

In any event, as I view it, this case does not turn on the loss of a chance to bear children. Share Health Plan of Nebraska, Inc., was obligated under its contract "to arrange to provide" Nancy Steineke "medical, surgical and hospital services and benefits," including "care for a Medical Emergency furnished by or under the order of a PLAN PHYSICIAN," which order could be "made retroactively if justified by the Medical Emergency." The contract defined medical emergency as

> the sudden onset of an illness or an accidental bodily injury subject to the following additional requirements.
>
> (a) The condition so treated must have required treatment of such immediate nature that the patient's life or health might have been jeopardized had he been taken to a PLAN PHYSICIAN.
>
> (b) The patient must have been in shock, or have been unconscious or incapable of rational, independent

judgment concerning the medical treatment or services rendered.

Steineke alleged that Share Health Plan breached its contract when its representative refused to authorize the medical services at Archbishop Bergan Mercy Hospital when Share Health Plan knew or should have known that such services were covered as a medical emergency. Furthermore, Steineke alleged that as a direct and proximate result, she sustained mental and physical pain and suffering and lost as well the ability to conceive and bear children in the future.

Although those allegations sound in contract, as the majority concludes, they also imply that Share Health Plan failed to act reasonably under the circumstances, thereby also stating a cause of action in tort. *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994) (negligent failure to fulfill common-law duty to perform agreed-upon activity with care, skill, reasonable expediency, and faithfulness may be a tort as well as breach of contract).

The record reveals that at the time of the ultrasonic examination at Bergan Mercy, there was no free fluid in Steineke's "perineal cavity." However, by the time surgery was performed at the University of Nebraska Medical Center, there was blood in her abdomen. In the opinion of Dr. Robert Luby, the "implantation side of [Steineke's fallopian] tube" started bleeding between the time of the ultrasonic test at Bergan Mercy and the surgery at the medical center.

At this point in the proceedings and under the present state of the record, it must be inferred that the bleeding might have jeopardized Steineke's health or life and thus brought her condition within the definition of a medical emergency. See *Barta v. Kindschuh, ante* p. 208, 518 N.W.2d 98 (1994) (on appellate review, party against whom summary judgment granted given benefit of all reasonable inferences deducible from evidence).

While it appears that the majority takes some comfort from the fact that Steineke consented to the surgery performed at the medical center, the fact is that whatever import the consent form she signed might have as between the medical center and her, it has none as between Share Health Plan and her. Thus,

under the circumstances, I would hold Share Health Plan liable for all the consequences of its inappropriate insistence that Steineke be transferred to the medical center, including tort damages.

In *Wickline v. State*, 192 Cal. App. 3d 1630, 228 Cal. Rptr. 661 (1986), *republished* 239 Cal. Rptr. 810, a Medi-Cal recipient sued the State of California for negligent discontinuance of her Medi-Cal eligibility. The plaintiff's physician sought to extend her hospitalization to 8 days. However, a Medi-Cal utilization reviewer authorized only 4 days. Upon returning home, the plaintiff suffered complications that later required amputation of her leg. Although the state was not held liable due to the physician's failure to file another request for extension of hospital stay, the court left the door open for claims against third-party payors who make medically inappropriate decisions.

> The patient who requires treatment and who is harmed when care which should have been provided is not provided should recover for the injuries suffered from all those responsible for the deprivation of such care, including, when appropriate, health care payors. Third party payors of health care services can be held legally accountable when medically inappropriate decisions result from defects in the design or implementation of cost containment mechanisms . . . .

*Wickline*, 192 Cal. App. 3d at 1645, 239 Cal. Rptr. at 819.

Private third-party payors are potentially liable as well. In *Wilson v. Blue Cross of Southern Cal.*, 222 Cal. App. 3d 660, 271 Cal. Rptr. 876 (1990), a private insurer refused to authorize hospitalization for a patient suffering from depression, chemical dependency, and anorexia. The patient subsequently committed suicide. The California Court of Appeal reversed the trial court's summary judgment in favor of the defendants and held that there was substantial evidence that the insurer's decision not to approve hospitalization was a substantial factor in bringing about the patient's demise.

Accordingly, I would reverse the judgment of the district court and remand the cause for further proceedings.

LANPHIER, J., joins in this dissent.