Filed 9/8/15  Reed v. Regal Medical Group CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| SHARRON L. REED et al., | |
| Plaintiffs and Appellants, | E059895 |
| v. | (Super.Ct.No. RIC1202669) |
| REGAL MEDICAL GROUP, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Dallas Holmes* and Matthew C. Perantoni, Judges.  Affirmed.

Michael F. Armstrong and James F. Fleming for Plaintiffs and Appellants.

Hewitt & Truszkowski, Stephen L. Hewitt, Henry C. Truszkowski and Kevin C. Almeter for Defendant and Respondent.

---

* Judge Holmes is a retired judge of the Superior Court of Riverside County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1

INTRODUCTION

Plaintiffs Sharron L. Reed, Tammy Jane Reed, Tanya Jo Reed, and Timothy J. Reed (referred to collectively as the Reeds), the widow and children of decedent James A. Reed, appeal from (1) the judgment of dismissal following an order granting judgment on the pleadings as to the causes of action for wrongful death and loss of consortium, and (2) the trial court sustaining the demurrer of defendant Regal Medical Group, Inc., as to the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing in plaintiffs' third amended complaint.  The Reeds contend (1) they properly pled the existence of a contractual relationship under which they were third-party beneficiaries and all the elements of a breach of contract; (2) they properly pleaded the elements of a breach of the implied covenant of good faith and fair dealing; and (3) their negligence-based claims are subject to a two-year statute of limitations for general negligence, not a one-year statute of limitations for medical malpractice.  We find no error, and we affirm.

FACTS AND PROCEDURAL BACKGROUND

We state the facts alleged by the Reeds consistent with the presumptions that govern our review of a judgment of dismissal following orders granting a judgment on the pleadings and sustaining a demurrer.  "We treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Hudson v. County of Los Angeles* (2014) 232 Cal.App.4th 392, 408.)

Aetna Healthcare of California, Inc., (Aetna) provided health care benefits to employees of the Temecula Valley Unified School District and their families under a group agreement of which Sharron and James Reed were members and participants.  The

Reeds alleged that Aetna had a contractual or joint venture relationship with Regal to administer health care and to process medical claims on behalf of Aetna's members. The Reeds alleged that Regal acts as a third-party administrator to provide utilization review services to the plan established by Aetna; such services included making determinations as to the availability of medical benefits under the plan.

The Reeds alleged that in May 2009, James's primary care physician requested approval for treatment by a liver specialist and approval for a liver transplant after he exhibited symptoms of liver failure. James and Sharron notified Regal of the existence of a claim and presented a claim seeking authorization for medical treatment for liver failure. Thereafter, they made several more requests for the recommended treatment, but Regal failed to respond to or approve the claim. Regal eventually approved James's claim, but by then his condition had deteriorated to the point that his treating physicians acknowledged he could not survive surgery. On February 25, 2010, James died from complications related to liver failure.

The Reeds filed a complaint against Regal on February 24, 2012. On July 2, 2012, the Reeds filed a first amended complaint alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, loss of consortium, negligent infliction of emotional distress, and wrongful death.

Regal filed a demurrer and motion to strike portions of the first amended complaint. As to the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, Regal contended that the first amended complaint did not establish a contractual relationship between it and the Reeds, and neither cause of

3

action set out the essential provisions of such a contract nor attached it to the complaint. As to the causes of action for loss of consortium and wrongful death, Regal contended the Reeds failed to set out what duty had been breached.

The parties entered into a stipulation to allow the Reeds to file a second amended complaint, and the trial court granted the Reeds leave to do so. The Reeds filed a second amended complaint on November 26, 2012, in which the Reeds withdrew their cause of action for negligent infliction of emotional distress and added a cause of action for breach of statutory duty. Regal demurred to all but the wrongful death cause of action. The trial court sustained the demurrer as to the causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of statutory duty, but it overruled the demurrer as to the cause of action for loss of consortium and granted leave to amend.

The Reeds filed a third amended complaint on March 21, 2013, alleging causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, wrongful death, and loss of consortium. Regal again demurred as to the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Regal contended the complaint failed to allege the applicable terms of the asserted contract and did not attach any copy of the contract to the complaint. The trial court sustained Regal's demurrer as to those causes of action and granted leave to amend.

4

The Reeds filed a fourth amended complaint alleging only wrongful death and loss of consortium. The Reeds state in their appellate brief that because they had no new facts to allege as to the breach of contract and bad faith causes of action until they could obtain more discovery, they elected not to amend those causes of action.

Regal filed an answer denying the allegations of the fourth amended complaint and, thereafter, filed a motion for judgment on the pleadings. Regal asserted that it is a health care provider, and the one-year statute of limitations imposed by the Medical Injury Compensation Reform Act of 1975 (MICRA) under Code of Civil Procedure section 340.5 precludes the Reeds' claims for wrongful death and loss of consortium. The trial court granted the motion, and a judgment of dismissal was entered.

DISCUSSION

**Standard of Review**

When the trial court sustains a demurrer with leave to amend, the plaintiff may elect not to amend. The order sustaining the demurrer is treated as an intermediate order as to that cause of action, appealable after final judgment, and the plaintiff is deemed to have elected to stand on the validity of the cause of action as originally pleaded. (*National Union Fire Ins. Co. of Pittsburgh*, *PA v. Cambridge Integrated Services Group*, *Inc*. (2009) 171 Cal.App.4th 35, 44-45.) As noted *ante*, in reviewing a judgment of dismissal following orders granting judgment on the pleadings and sustaining a demurrer, "[w]e treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Hudson v. County of Los Angeles*, *supra*, 232 Cal.App.4th at p. 408.)

5

**Cause of Action for Breach of Contract**

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom. [Citation.] A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect. [Citation.] In order to plead a contract by its legal effect, plaintiff must 'allege the substance of its relevant terms. This is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'" (*McKell v. Washington Mutual Inc*. (2006) 142 Cal.App.4th 1457, 1489.)

In their third amended complaint, the Reeds alleged that "Aetna had a written contractual relationship with Regal Medical and/or Aetna and Regal were engaged in a joint venture to administer healthcare and process claims on behalf of its members. Specifically, Regal is [a] third party administrator that provides medical utilization review services in connection with the health plan established by Aetna with the Temecula Valley Unified School District which services consisted of, among other things, making a determination regarding the availability of medical benefits under the plan. That said utilization reviews refer to external evaluations that are based on established clinical criteria and are conducted by third party payors, purchasers or health care organizers to evaluate the appropriateness of medical care. Thus, Regal was Aetna's agent and/or joint venture [*sic*] for the purpose of claims administration and rendering utilization review services under the health insurance plan . . . [and a]ccordingly, Regal

6

was vested with the power to act for Aetna." Plaintiffs further alleged that "the intendment of the agreement is that [Sharron and James] were third party beneficiaries for the aforementioned Regal-Aetna agreement. As such, Regal had the ability to either approve or deny the benefits due [James]."

The Reeds alleged that Regal "breached the obligations under the subject healthcare policy in the following manner: [¶] A. By delaying in making a determination under all potentially applicable coverages pertaining to [James's] claim for treatment; [¶] B. By failing to conduct a full and complete investigation into the facts and circumstances of the claim asserted by [James]; and [¶] C. By failing and refusing to refer [James] to a physician for treatment as defined by the terms and provisions of the health plan."

*Allegation of Third-Party Beneficiary Status*

The Reeds contend they pled a breach of contract against Regal based on a contract between Regal and Aetna, under which James was an express or third-party beneficiary. A party asserting third-party beneficiary status "carries the burden of proving that the contracting parties' intended purpose in executing their agreement was to confer a direct benefit on the alleged third party beneficiary." (*Alling v. Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1439.) Here, the Reeds have alleged no more than a bald legal conclusion that Regal and Aetna were in a written contractual relationship, the intendment of which was that Sharron and James were third-party beneficiaries. As discussed *ante*, the Reeds alleged no specific provisions of that purported contract. Moreover, the Reeds alleged that Regal breached the plan between

7

Aetna and Sharron and James, not that Regal breached the terms of its purported contract with Aetna. We conclude the Reeds failed to adequately allege third-party beneficiary status based on a contract between Aetna and Regal.

The Reeds have cited a number of cases for the proposition that a nonparty to a contract may have standing to sue on the contract. In *Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1034, the court held that a surviving spouse had no standing to maintain an action for wrongful denial of policy benefits against her deceased husband's health insurance company when she was not a party to the contract. (*Id.* at p. 1034.) In *Harper v. Wausau Ins. Co.* (1997) 56 Cal.App.4th 1079, 1091, the court held that a person injured in a slip and fall accident on property owned by the insured was a member of the class protected under the express provisions of the policy. In *Northwestern Mut. Ins. Co. v. Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1041-1042 (Fourth Dist., Div. Two), this court held that a permissive user of an automobile was an express third-party beneficiary under the omnibus clause of the owner's liability policy and thus had a right of action against the insurer for bad faith refusal to effect settlement within the policy limits. In *Cancino v. Farmers Ins. Group* (1978) 80 Cal.App.3d 335, 337-338, the court similarly held that the plaintiff was an express insured under the terms of an automobile insurance policy when he was loading an insured vehicle owned by another at the time he was struck by another vehicle driven by an uninsured motorist. (See also *San Diego Housing Com. v. Industrial Indemnity Co.* (1998) 68 Cal.App.4th 526, 536, 538-539 [addressing right to coverage in the third-party liability insurance context]; *Royal Surplus Lines Ins. Co. v. Ranger Ins. Co.* (2002) 100

Cal.App.4th 193, 198-199 [subcontractor's liability insurance company was properly joined when the plaintiff property owner was an additional insured on the policy]; *McLaughlin v. Connecticut General Life Ins. Co.* (N.D. Cal. 1983) 565 F.Supp. 434, 453-454, overruled on another ground by *Aetna Casualty & Sur. Co. v. C.D.J.T., Inc.* (9th Cir. 1995) 1995 U.S.App. Lexis 13475, at p. *7 [surviving spouse had a valid cause of action against the health insurance company that failed to properly investigate a claim].)

In short, because none of those cited cases addressed the alleged breach of a separate contract between an insurer and a third-party claims administrator, they are not helpful to our analysis.

*Allegation of Joint Venture*

The Reeds also allege that Aetna and Regal were joint venturers as a basis for asserting liability against Regal. Noting the absence of California authority on point, the Reeds rely on cases from other states for the proposition that "the third-party administrator of a health plan can be held liable for breach of contract or bad faith, even in the absence of direct privity of contract." The cited cases are *Farr v. Transamerica Occidental Life Insurance Co.* (Ariz.App. 1984) 145 Ariz. 1 (*Farr*); *Albert H. Wohlers & Co. v. Bartgis* (Nev. 1998) 114 Nev. 1249, 1262-1263 (*Bartgis*); and *Cary v. United of Omaha Life Ins. Co.* (Colo. 2003) 68 P.3d 462, 469 (*Cary*).

In *Farr*, a jury awarded damages to an insured in an action against the insurer and a claims administrator for tortious bad faith refusal to pay insurance benefits under a group health policy. The trial court granted judgment notwithstanding the verdict to the claims administrator on the ground that it was not a party to the insurance contract, but

9

the appellate court reversed and reinstated the verdict. (*Farr*, *supra*, 145 Ariz. at pp. 10-11.) The court held that under Arizona law, a joint venture was established between a claims administrator and an insurer when the claims administrator "issued certificates of coverage, billed and collected premiums, handled the investigation of claims, and distributed brochures to induce the purchase of policies." (*Id.* at p. 11.)

In *Bartgis*, the court upheld judgment in favor of an insured against a medical insurer and policy administrator based on breach of contract and bad faith. The court held that "where a claims administrator is engaged in a joint venture with an insurer, the administrator 'may be held liable for its bad faith in handling the insured's claim, even though the organization is not technically a party to the insurance policy.'" (*Bartgis*, *supra*, 114 Nev. at p. 1262.) The court further held that the evidence established a joint venture when the claims administrator "developed promotional material, issued policies, billed and collected premiums, paid and adjudicated claims, . . . assisted [the insurer] in the development of the ancillary charges limitation provision [and] shared in [the insurer's] profits." (*Id.* at p. 1263.)

In *Cary*, the court held that a special relationship existed between administrators and the insured sufficient to impose a duty of good faith on administrators who "had primary control over benefit determinations, assumed some of the insurance risk of loss, undertook many of the obligations and risks of an insurer, and had the power, motive, and opportunity to act unscrupulously in the investigation and servicing of the insurance claims." (*Cary*, *supra*, 68 P.3d at p. 465.)

Those cited cases are distinguishable because the Reeds have failed to adequately plead a joint venture. "'A joint venture . . . is an undertaking by two or more persons jointly to carry out a single business enterprise for profit.'" (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 370.) "'There are three basic elements of a joint venture: the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise. [Citation.]'" (*Ibid.*) The court found the complaint in that case was adequate to allege the existence of a joint venture when facts establishing at least two of the three requisite elements of a joint venture were specifically pled. (*Id.* at pp. 370-371.) Here, in contrast, the Reeds pled only the legal conclusion of a joint venture but failed to plead any of the elements of control, share in profits, or ownership interest in the enterprise. We conclude the Reeds have failed to set forth facts sufficient to allege the existence of a joint venture between Aetna and Regal.

**Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing**

"'The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.' [Citation.] The covenant does not exist independently of the underlying contract." (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 711-712.) Here, because the Reeds have

11

failed to adequately allege the existence of a contract, their cause of action for bad faith necessarily fails as well.

**Causes of Action for Wrongful Death and Loss of Consortium**

The trial court granted Regal's motion for judgment on the pleadings as to the causes of action for wrongful death and loss of consortium on the ground the one-year statute of limitations under Code of Civil Procedure section 340.5 applied to the Reeds' claims. The Reeds contend that Regal negligently performed utilization review decisions and services as a third-party administrator. They contend their action was not a medical malpractice action subject to the one-year statute of limitations, but rather was one for ordinary negligence subject to the two-year statute of limitations under Code of Civil Procedure section 335.1.

Specifically, in their fourth amended complaint, the Reeds alleged that Regal "owned, operated, and controlled a public establishment known as an Independent Practice Association . . . which is engaged in the business of healthcare administration and/or processing of medical claims." The Reeds alleged that Sharron and James were "members of and participants in a group agreement or health plan" with Aetna, and Regal was a "third party administrator that provides medical utilization review services in connection with the health plan established by Aetna . . . which services consisted of, among other things, making a determination regarding the availability of medical benefits under the plan. That said utilization reviews refer to external evaluations that are based on established clinical criteria and are conducted by third party payors, purchasers or health care organizers to evaluate the appropriateness of medical care. Thus, Regal was

12

Aetna's agent and/or joint venturer [*sic*] for the purpose of claims administration and rendering utilization review services under the health insurance plan . . . . Accordingly, Regal was vested with the power to act for Aetna. As such, Regal had the ability to either approve or deny the benefits due [to James]."

Code of Civil Procedure section 340.5 establishes a one-year statute of limitations from the date of discovery in "an action for injury or death against a health care provider based upon such person's alleged professional negligence." For purposes of the statute of limitations, a "'[h]ealth care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code, or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider." (Code Civ. Proc., § 340.5, subd. (1).) "'Professional negligence' means a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed and which are not within any restriction imposed by the licensing agency or licensed hospital." (Code Civ. Proc., § 340.5, subd. (2).)

13

The term professional negligence encompasses actions related to "a matter that is an ordinary and usual part of medical professional services." (*Central Pathology Service Medical Clinic*, *Inc. v. Superior Court* (1992) 3 Cal.4th 181, 192-193.) In *Palmer v. Superior Court* (2002) 103 Cal.App.4th 953, the plaintiff sued his doctor, his health care plan, and the medical corporation that provided medical utilization review for the health care plan because they had denied him a requested prosthesis. (*Id*. at pp. 957-959.) The court held that the claims of negligent utilization review services arose out of the professional negligence of a health care provider. (*Id.* at p. 967.) The court reasoned that utilization review services should be considered professional services because "statutes require that utilization review be conducted by medical professionals, and they must carry out these functions by exercising medical judgment and applying clinical standards." (*Id.* at p. 972.) Although *Palmer* dealt with a claim of punitive damages against a health care provider under Code of Civil Procedure section 425.13, not with the statute of limitations under Code of Civil Procedure section 340.5, the court instructed that the definitions of health care provider and professional negligence in section 425.13 should be read together and harmonized with other MICRA statutes. (*Palmer*, at pp. 961-963.)

The Reeds argue, however, that Regal is a health care service plan and, as such, is not subject to MICRA. Under the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.), a health care service plan is statutorily defined as "Any person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those

14

services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." (Health & Saf. Code, § 1345, subd. (f)(1).) "'Provider' means any professional person, organization, health facility, or other person or institution licensed by the state to deliver or furnish health care services." (*Id.*, subd. (i).) Other statutes distinguish health care service plans and health care providers. Civil Code section 3428, subdivision (c), states: "Health care service plans . . . are not health care providers under any provision of law, including, but not limited to, Section . . . 340.5 . . . of the Code of Civil Procedure." And a health care service plan's role in determining the medical necessity of a requested procedure "shall [not] cause a health care service plan to be defined as a health care provider for purposes of any provision of law, including" Code of Civil Procedure section 340.5. (Health & Saf. Code, § 1367.01, subd. (m).)

The Reeds rely on *Kaiser Foundation Health Plan*, *Inc. v. Superior Court* (2012) 203 Cal.App.4th 696, 712-714 (*Kaiser*). In *Kaiser*, the court held that the plaintiffs were not required to comply with Code of Civil Procedure section 425.13 to allege punitive damages against Kaiser Foundation Health Plan, Inc., which administered the plaintiff daughter's health care plan. Notably, Kaiser Foundation Health Plan, Inc., *admitted* it was a health care service plan under Health and Safety Code section 1340 et seq., and as such did not provide medical care itself, but contracted with other Kaiser entities to deliver medical care to subscribers. (*Kaiser*, at pp. 708, 715.)

Here, in contrast, the Reeds, in the various versions of their complaint, never alleged that Regal is a health care service plan. Rather, they alleged that Regal is an independent practice association (IPA). This court has explained: "[A]n IPA is an

15

association of physicians that contracts to provide medical care to HMO members in the physicians' own offices. The IPA in turn contracts with each of its independent practitioner members regarding the terms of participation in the IPA, including payment." (*Inland Empire Health Plan v. Superior Court* (2003) 108 Cal.App.4th 588, 590 [Fourth Dist., Div. Two]; see *Heritage Provider Network, Inc. v. Superior Court* (2008) 158 Cal.App.4th 1146, 1149, fn. 2 [stating that "IPA's contract with health maintenance organizations (HMO's) to provide medical care to HMO members. The IPA's, which provide administrative services such as the credentialing of physicians and eligibility verifications of the HMO's members, then contract with medical professionals to treat members. The medical professionals are typically deemed independent contractors responsible for their own separate medical practices"].)

Considering all those authorities, our inquiry focuses on whether the alleged acts were those which a medical practitioner would ordinarily perform in the capacity of a health care provider. We agree with *Palmer*, in which the court stated that medical utilization review must be conducted by medical professionals who exercise medical judgment and apply clinical standards. (*Palmer*, *supra*, 103 Cal.App.4th at p. 972.) We thus conclude the trial court did not err in determining that the Reeds' claims are barred by the one-year statute of limitations under Code of Civil Procedure section 340.5.

While the Reeds cite various cases for the proposition that damages may be sought for negligence in making benefit determinations or for wrongful denial of coverage (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412; *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594; *Kotler v. PacifiCare of California* (2005) 126

Cal.App.4th 950; *Wilson v. Blue Cross of So. California* (1990) 222 Cal.App.3d 660,

abrogated in *Mintz v. Blue Cross of California*, at p. 1607), those cases shed no light on

the statute of limitations issue before us.

DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                                              J.

We concur:


RAMIREZ
          P. J.


HOLLENHORST
          J.